**Alta CHRAPLIWY, et al., Plaintiffs,**

**v.**

**UNIROYAL, INC., et al., Defendants.**

**Civ. No. 72 S 243.**

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 18, 1983.

## MEMORANDUM AND ORDER

GRANT, Senior District Judge.

This case is before this Court on remand from the Seventh Circuit Court of Appeals for the determination of attorneys' fees to be awarded in this Title VII case. Three issues remain to be resolved:

I. Whether any money remains to be paid on the lodestar figure for legal services performed before the district court;

II. Whether any reduction is necessary in the quality award of $200,000 in light of the higher attorneys' fees awarded on appeal; and

III. Whether the fees requested by plaintiffs' counsel for appellate litigation are excessive and must be reduced?

1. The detailed factual and procedural history of the case is set forth at *Chrapliwy v. Uniroyal, Inc.,* 509 F.Supp. 442 (N.D.Ind.1981) (Hereinafter *"Chrapliwy I"*).

*Facts*

In 1972, the plaintiffs brought this class action pursuant to Title VII of the Civil Rights Act of 1964 on behalf of all female workers employed by the defendant at its plastics plant in Mishawaka, Indiana.[1] In 1979, the class action was settled out of court after plaintiffs' attorneys assisted in achieving the debarment of Uniroyal from federal contracts.[2] The settlement agreement provided for the reinstatement of 296 class members with full seniority as well as cash and pension benefits totaling $9,318,-000. Uniroyal agreed to pay the plaintiffs' attorneys' fees in an amount to be established by this Court.

This Court applied a lodestar approach to calculate the attorneys' fees, *See Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980), and awarded fees totaling $583,679. This Court then enhanced the awarded fees by allowing a $50,000 bonus for risk and a $200,000 bonus for the quality of representation and the exceptional results achieved by plaintiffs' attorneys. The total award was $833,679.

Plaintiffs appealed this award, contending that it was inadequate as a matter of law. Plaintiffs contended this Court had erred in disallowing compensation for work related to Uniroyal's debarment from future federal contracts. Plaintiffs further argued that this Court had erred in limiting attorneys' fees to local rates instead of the higher fees customarily charged by plaintiffs' counsel in New York and Washington, D.C. Finally, plaintiffs contended that this Court had abused its discretion in awarding only $250,000 for risk and quality. Uniroyal cross-appealed, contending that the risk and quality awards were excessive.

In *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir.1982) (hereinafter *"Chrapliwy II"*), the Seventh Circuit held that the plaintiffs were entitled to compensation for

2. *See Department of Labor OFCCP v. Uniroyal,* 20 Fair Empl.Prac.Cas. (BNA) 419 (1979).

their work towards Uniroyal's debarment from federal contracts since such action "contributed to the ultimate termination of the Title VII action." *Chrapliwy* II at 767. That Court further held that plaintiffs' attorneys were entitled to compensation at their "customary" rates rather than at "local rates." The Court affirmed this Court's risk and quality award but noted that some reduction might be necessary if the quality award overlapped the quality factor implicit in the higher fees awarded on appeal. The Court then concluded that, subject to minor adjustment by this Court, the lodestar would be "... close to the $1,510,768 for which plaintiffs contend." *Chrapliwy* II at 769.

## I

Whether any money remains to be paid on the lodestar figure for legal services performed before the district court?

Uniroyal has paid plaintiffs the sum of $1,510,768 and, relying upon this Circuit's opinion, *supra*, now contends that this sum satisfies all attorneys' fees due for work performed before the district court. Plaintiffs, however, have submitted to this Court a detailed chart suggesting that the proper lodestar figure is $1,547,471, or that Uniroyal still owes $36,703 [3] plus interest on the lodestar figure.

Uniroyal misreads the Circuit Court's opinion. Therein the Court stated:

It follows that when the number of hours, as restored, are multiplied by the billing rates requested, the initial amount determined will be close to the $1,510,768 for which plaintiffs contend, subject to minor adjustments.[19]

19. The district court's opinion includes a table which states the requested hours and requested rates for the plaintiffs' attorneys' fees. *See Chrapliwy, supra,* 509 F.Supp. at 458–459. The plaintiffs have included a similarly constructed table in their reply brief, but the number of hours requested differs from the number shown on the district court's table. *We leave to the district court the task of determining the need for any adjustments in these numbers.*

(Emphasis supplied) *Chrapliwy* II, *supra* at 769. The Circuit's opinion, therefore, clearly contemplated that this Court must determine the proper lodestar figure.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* —— U.S. ——, ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 31 Fair Empl.Prac.Cas. (BNA) 1169, 1173 (1983). The chart below, reproduced from plaintiffs' pleadings before this Court, summarizes this Court's calculation of the proper lodestar figure for work performed before this Court.

| Attorney | Through 4/30/80 | 5/1/80 Through 8/31/80 | Hours Related to Debarment | Total Hours | Requested Hourly Rates | Lodestar Figure |
|---|---|---|---|---|---|---|
| Ewald | 4,552.7 | 274.00 | 1,658.85 | 6,485.55 | $175 | $1,134,971.25 |
| Fette | 2,562.4 | 88.25 | 155.25 | 2,805.90 | $ 70 | 196,413.00 |
| Mick | 1,008.8 | 169.50 | 60.90 | 1,239.20 | $ 60 | 74,352.00 |
| Blumrosen | 248.1 | 12.00 | 179.05 | 439.15 | $200 | 87,830.00 |
| Frum | 41.4 | 1.50 | 259.50 | 302.40 | $110 | 33,264.00 |
| Seymour | 43.4 | ----- | 5.00 | 48.40 | $175 | 8,470.00 |
| Ginsburg | ----- | ----- | 29.75 | 29.75 | $125 | 3,718.75 |
| Ryan | 31.5 | 14.50 | ----- | 46.00 | $ 80 | 3,680.00 |
| Bent | 40.6 | ----- | ----- | 40.60 | $ 50 | 2,030.00 |

---

3. By Order dated April 13, 1982, the Court of Appeals for the Seventh Circuit stated that the interest on the lodestar figure would begin to accrue as of 28 days after the date of the order, i.e., on May 11.

| Attorney | Through 4/30/80 | 5/1/80 Through 8/31/80 | Hours Related to Debarment | Total Hours | Requested Hourly Rates | Lodestar Figure |
|---|---|---|---|---|---|---|
| Gautier | 25.5 | ----- | ----- | 25.50 | $ 50 | 1,275.00 |
| Passaro | 19.2 | 5.25 | ----- | 24.45 | $ 60 | 1,467.00 |
| | 8.573.6 | 565.00 | 2,348.30 | 11,486.90 | | $1,547,471.00 |

■ Several explanatory points are in order. First, the hours in the above chart are the hours this Court approved in *Chrapliwy* I, 509 F.Supp. at 455, 458–59. The hours related to debarment are taken from Uniroyal's representations to this Court. *See Chrapliwy* I, *supra* at 451 and n. 2. As such, this Court finds that the proper lodestar figure is $1,547,471 and concludes that defendant Uniroyal owes $36,703 plus interest on the lodestar figure.

## II

Whether any reduction is necessary in the quality award of $200,000 in light of the higher attorneys' fees awarded on appeal?

In *Chrapliwy* I, this Court awarded plaintiffs $200,000 for the quality of representation and "the results achieved." 509 F.Supp. at 461–62. Recent cases affirm the use of quality awards to compensate counsel where exceptional results are achieved; where high quality legal services are provided; or where complex litigation is involved. *See New York Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 at 1153 (2d Cir., 1983); *Ramos v. Lamm*, 713 F.2d 546 at 557 (10th Cir., 1983) (" 'Exceptional success' justifying an enhanced fee may be based upon the performance of counsel...."); *Laffey v. Northwest Airlines*, 572 F.Supp. 354 at 376, 32 Fair Empl.Prac.Cas. (BNA) at 787 (1983); *Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. at 1940, 31 Fair Empl.Prac.Cas. (BNA) at 1174 ("... in some cases of exceptional success, an enhanced award may be justified.")

■ A quality award should not, however, provide a windfall to attorneys but rather, "... [is] an 'attempt to calculate more precisely the market value of the services provided by the attorney.' " *Laffey, supra,* 572 F.Supp. at 376, 32 Fair Empl.Prac.Cas. (BNA) at 787 citing *Alabama Power Company v. Gorsuch*, 672 F.2d 1, 6 (D.C.Cir.1982). In *In re Illinois Congressional Districts Reapportionment Cases*, 704 F.2d 380, 384, the Seventh Circuit recently admonished that: "... [D]istrict Courts should not lightly employ them [multipliers] in making fee awards; they should be given only in cases that are significant and where the quality of the attorney's work is considerably above average."

With these considerations in mind, this Court must reexamine the propriety of a $200,000 quality award in light of the substantially higher attorneys' fees awarded on appeal. When this Court originally awarded $200,000, it considered several factors. First, it felt that it could not compensate plaintiffs for 2,348.3 hours which plaintiffs' attorneys had spent in an attempt to debar Uniroyal from future federal contracts. Second, this Court felt that the hourly rates requested by plaintiffs' counsel were excessive, and determined that plaintiffs' attorneys should be compensated at "local," not their substantially higher "customary" rates. These two factors weighed heavily in this Court's calculation of a quality award.

On appeal, the Seventh Circuit held that plaintiffs were entitled to be compensated for the hours spent by their attorneys to debar Uniroyal from federal contracts. Additionally, the Court held that plaintiffs' attorneys were to be compensated at their "customary," not "local," rates. The result was a very substantial increase in the lodestar figure for work performed before the district court. This Court originally awarded a lodestar figure of $583,679. Af-

ter appeal, the lodestar figure has nearly tripled to $1,547,471.

■ Implicit in these substantially higher attorneys' fees is a quality factor; implicit in the compensation for hours worked towards debarment is compensation for the extraordinary results achieved by plaintiffs' attorneys. This Court concludes that its quality award of $200,000 must be reduced in light of the above enumerated considerations.

Nonetheless, some quality award is still appropriate. The results achieved by plaintiffs were exceptional within the meaning of *Hensley, supra,* —— U.S. at ——, 103 S.Ct. at 1940, 31 Fair Empl.Prac.Cas. (BNA) at 1174. By virtue of plaintiffs' attorneys' tenacity and high quality legal services, almost 300 terminated workers were restored to employment with full seniority. Cash and pension benefits of $9,318,000 were won. This Court reiterates:

> Acknowledging the results obtained would not be complete without recognizing the impact of this lawsuit on the Department of Labor. The actions by the plaintiffs' attorneys forced the Labor Department to create a working enforcement system to implement Executive Order 11246, and police other federal contractors in their compliance with its procedures. This mechanism will continue to operate, vindicating the rights of other employees and effectuating the congressional intent behind both Title VII and the Executive Order.

509 F.Supp. at 462.

■ This Court must balance the higher attorneys' fees awarded on appeal and the compensation for debarment with the high quality legal services rendered, the exceptional results achieved and this Court's duty to award fees which will effectuate the purposes underlying Title VII. *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Such a calculation is inherently imprecise, and thus rests in this Court's sound discretion. *Laffey, supra,* 572 F.Supp. at 361, 32

Fair Empl.Prac.Cas. (BNA) at 775. This Court concludes that a quality award of $100,000 will adequately compensate plaintiffs' attorneys for the high quality legal services rendered and the exceptional results achieved, yet not be a windfall. *Laffey, supra,* 572 F.Supp. at 376, 32 Fair Empl.Prac.Cas. (BNA) at 787; *See also Arenson v. Board of Trade of City of Chicago,* 372 F.Supp. 1349, 1359 (N.D.Ill.1974) ("This Court's award ... is meant to adequately compensate them [the attorneys] for initiating this significant litigation and negotiating such a beneficial settlement for the class; yet at the same time, this award is not meant to provide a wind fall [sic] to the plaintiffs' attorneys.") This Court's quality award of $200,000 is accordingly reduced to the sum of $100,000.

### III

Whether the fees requested by plaintiffs' counsel for appellate litigation are excessive and must be reduced?

Plaintiffs request $451,835.25 for attorneys' fees on appeal. This figure consists of a lodestar figure of $301,835.25 and a risk and quality award of $150,000. Uniroyal argues that the fees on appeal are excessive. This Court will address Uniroyal's objections seriatim.

a). The Addition of Two Attorneys to the Appellate Litigation.

On appeal, plaintiffs retained two additional attorneys (Boyd and Stern) to assist with the appellate litigation. Uniroyal contends that the addition of these two attorneys was unjustifiable and merely serves to inflate the attorneys' fees to be awarded for appellate litigation. Uniroyal suggests that since neither Boyd nor Stern was the chief draftsman of the appellate brief nor presented oral argument, the hours they have submitted are excessive and duplicative. Uniroyal concludes that no compensation should be allowed for the 270 hours submitted by Boyd and Stern.

Plaintiffs contend that the addition of Boyd and Stern was necessary to provide

independent judgment during the course of a difficult appeal. For the reasons stated below, this Court declines to disapprove the addition of these two attorneys to the appellate litigation. Rather, the issue is whether the hours billed by Boyd and Stern would properly have been expended by plaintiffs' attorneys on the prosecution of its own petition for fees:

> Counsel is not free, however, to exercise its judgment in a fashion that unnecessarily inflates the losing party's fee liability, e.g., by injecting an additional layer of attorneys into the case. *Thus hours which would not have been expended by an attorney prosecuting its own petition for fees cannot be charged to its opponent when separate counsel is brought into the case to pursue the fee award.*

(emphasis supplied) *Laffey, supra* 572 F.Supp. at 369, 32 Empl.Prac.Cas. (BNA) at 781–82.

■ There is a quaint old saw among attorneys that "A lawyer who represents himself has a fool for a client." The retention of other counsel by attorneys to assist in difficult litigation is not unusual. Plaintiffs expressed disappointment with this Court's award of fees in *Chrapliwy* I. This Court feels that plaintiffs' decision to seek assistance on appeal was not unreasonable, and consequently, finds the addition of Boyd and Stern to the appellate litigation proper.

Nonetheless, careful scrutiny of the hours billed by Boyd and Stern is necessary and this Court's approval of the retention of Boyd and Stern does not preclude this Court from disallowing compensation for excessive and duplicative hours. See sections b and c, *infra*.

b). Adequate and Complete Time Records.

■ The fee applicant bears a heavy burden to document the hours devoted to litigation for which compensation is sought. As Chief Justice Burger recently noted:

> ... [W]hen a lawyer seeks to have his adversary pay the fees of the prevailing party, the lawyer must provide *detailed* records of the time and services for which fees are sought.

(emphasis supplied) *Hensley, supra* —— U.S. at ——, 103 S.Ct. at 1943, 31 Fair Empl.Prac.Cas. (BNA) at 1176 (concurring opinion); *Laffey, supra* 572 F.Supp. at 361, 32 Fair Empl.Prac.Cas. (BNA) at 776 ("... the fee application must contain sufficient detail to permit both the court and opposing counsel to conduct an informed appraisal of the merits of the application."); *New York Association for Retarded Children, Inc. v. Carey, supra; Ramos v. Lamm, supra; National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C.Cir.1982).[4]

Uniroyal contends that the time records of Attorney Boyd and Attorney Mick are inadequate to permit the award of attorneys' fees. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Where the documentation of hours is inadequate, the district court may reduce the award accordingly.*" *Hensley, supra* —— U.S. at ——, 103 S.Ct. at 1939, 31 Fair Empl.Prac.Cas. (BNA) at 1173.

Uniroyal submits that the time records of Boyd contain vague, generic entries such

---

4. In the preparation of fee applications it is insufficient to provide the District Court with very broad summaries of work done and hours logged. *Copeland* III recognized that the fee application need not present 'the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.' But the application must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified. The better practice is to prepare detailed summaries based on contemporaneous time records indicating the work performed by each attorney for whom fees are sought. In any event, once the reasonableness of the hours claimed becomes an issue, the applicant should voluntarily make his time charges available for inspection by the District Court or opposing counsel on request.
(footnotes omitted) (citations omitted) 675 F.2d at 1327.

as "reading and research," "drafting" and "conference Ewald" without any suggestion as to the substantive nature of the work performed. Uniroyal objects to any compensation for hours where the specific work performed is not identified.

Uniroyal's concern is reasonable. This Court's review of Boyd's time records finds them woefully deficient. These deficiencies are particularly evident when Boyd's time records are compared to those of lead counsel Ewald in this case:

### Boyd

| | |
|---|---|
| Research | 4.25 |
| Research | 2.00 |
| Research | .75 |
| Research | 1.00 |
| Research; conference TRE, GMS, Blumrosen | 3.00 |
| Research; drafting; phone—TRE | 3.75 |
| Drafting; conference with GMS | 2.00 |
| Research | 2.00 |
| Research | .50 |
| Research and drafting; conference with GMS | 6.00 |
| Drafting | .75 |
| Drafting | 7.75 |

### Ewald

| | |
|---|---|
| Drafting plaintiffs' reply brief in support of their Motion for Interim Award of Attorney's Fees | 1.75 |
| Preparing for oral argument, reviewing the order of the Court of Appeals on interim attorney's fees, and telephone conferences with Mick and Boyd | 2.75 |
| Preparing supplemental attorney's fee claim for September 1, 1980 through August 31, 1981, telephone conference with Mick regarding enforcement of the District Court's judgment in accordance with the Court of Appeals' decision, conference with Boyd, and researching law on enforcement of the judgment | 5.25 |
| Research on collection of part of the judgment pending appeal, telephone conferences with Boyd, Blumrosen and Mick regarding procedure for collection of the amount conceded by Uniroyal to be due, and preparation for oral argument in the Court of Appeals | 9.00 |

Inadequate detail in time records preclude this Court and opposing counsel from determining the reasonableness of the hours spent on particular tasks and whether the hours spent by attorneys were duplicative. In major litigation, such as the present case where numerous attorneys are involved, the possibility of duplication is substantial.

Plaintiffs offer several justifications for the lack of detail in Boyd's time records. They contend that the level of detail in Boyd's time records is similar to the detail found in defense attorneys' own records. This is totally irrelevant. Defense attorneys are not seeking to impose almost two million dollars worth of attorneys' fees upon an adversary.

Plaintiffs also offer the unsupported proposition that the specification in time records of particular issues researched is "at odds with common sense and normal billing practices." Plaintiffs conclude, "Thus, any attempt to distinguish among the particular issues addressed in attorneys' research at a particular time would be highly artificial and misleading." This is incorrect.

■ "Although it is not necessary to know 'the exact number of minutes spent nor the precise activity to which each hour was devoted' the fee application must contain sufficient detail to permit both the court and opposing counsel to conduct an informed appraisal of the merits of the application." *Laffey, supra* 572 F.Supp. at 361, 32 Fair Empl.Prac.Cas. (BNA) at 776 citing to *National Association of Concerned Veterans,* 675 F.2d 1319 (D.C.Cir. 1982). Here, Boyd's time records fail to list *any* substantive issue researched. Plaintiffs' argument that it is impossible to document the issues researched is belied by the commendable detail proferred by lead counsel Ewald in his own time records. Boyd's time records are inadequate as a matter of law.

■ Any ambiguities arising out of poor time records should be resolved against the applicant. *New York Association for Retarded Children, Inc., supra,* at 1142. Many courts have approved the use of percentage reductions "... as a practical means of trimming fat from a fee application." *Id.* at 1146. Here, Uniroyal charges that plaintiffs' attorneys have billed for excessive and duplicative hours.

This Court is unable to determine the validity of such claims because of Boyd's inadequate time records. This Court feels that a 20% reduction in Boyd's compensable hours will eliminate the possibility of duplication or unreasonable hours, as well as resolve the ambiguities arising from Boyd's inadequate records.

This Court rejects Uniroyal's suggestion that no compensation whatever be allowed for the hours submitted by Attorney Boyd. This remedy is much too severe. This Court accepts the representations of plaintiffs' counsel that Boyd played a significant role in the development and presentation of this case before the Court of Appeals.[5] Although any reduction in Boyd's hours is, at best, an estimate, 20% is a substantial reduction and will serve to preclude excessive or duplicative hours.

Uniroyal additionally challenges the time records of Attorney Mick. Mick has billed for approximately 50 hours of phone calls with no identification whatsoever of the substantive nature of these calls. These calls generally last 18 minutes (.30 hours) and on many occasions, his time records reflect more than one phone call to the same office on the same day.

Uniroyal suggests that "it can be presumed that the initial entries [in the time record] refer to brief conversations with secretaries asking the other attorney to return Mr. Mick's calls." Uniroyal suggests this Court disallow Mick compensation for 50 hours of undocumented telephone calls.

The sparseness of Mick's telephone records do effectively preclude this Court and opposing counsel from determining the propriety of 50 hours of phone calls. This Court is aware that Mick is local counsel for the plaintiffs and as such, needs to maintain close contact with the other attorneys involved in the litigation. But these time records are ambiguous. The multiplicity of phone calls, often two, sometimes three, on the same day, their short length and the sparseness of accompanying time records must be resolved against Mick.

■ This Court rejects Uniroyal's suggestion that Mick be denied compensation for 50 hours of phone calls. As with Boyd, this Court's examination of the time records submitted by other attorneys and the representations made by plaintiffs to this Court confirm that Mick had to spend a substantial amount of time on the phone. As such, this Court feels that a reduction of 5 hours will eliminate any surplusage from Mick's time records yet adequately compensate Mick for hours properly spent on the phone.

c). Excessive and Duplicative Hours

Uniroyal contends that the hours for which plaintiffs seek compensation are excessive and duplicative, and accordingly, must be reduced. Uniroyal notes that plaintiffs spent 675 hours devoted solely to their primary and reply brief in the Seventh Circuit, while defense counsel spent only 425 hours. Uniroyal further contends that the 120 hours which plaintiffs' attorneys devoted to preparation for a 20 minute oral argument are clearly excessive. Uniroyal also challenges the presence of four attorneys at oral argument for the plaintiffs, and, contends that the long work days billed by lead counsel Ewald, very often in excess of 10 hours, are excessive.

Initially, it must be said that it is somewhat inconsistent for Uniroyal to bitterly contest every stage of these proceedings and then complain that plaintiffs were overzealous in pursuing their claims. As this court noted in *Chrapliwy* I:

... Uniroyal did not surrender after the 1973 summary judgment, nor after any further order building upon that finding of liability, but, rather, continued to file motions attacking this Court's jurisdiction, asserted novel business defenses, and at one point sought sanctions against

---

**5.** Additionally, this Court's careful scrutiny of plaintiffs' attorneys' time records supports the significant role Attorney Boyd played in the development of the appeal. For example, lead counsel Ewald's time records include at least 37 entries relating to conversations or conferences with Boyd.

the petitioners as well as dismissal of this suit. No ground was surrendered without a struggle, and Uniroyal litigated each issue in this case until the debarment proceeding commanded a final settlement....

As Judge Rubin noted in *Perkins v. New Orleans Athletic Club*, 429 F.Supp. 661, 667 (E.D.La.1976): 'Those who elect a militant defense in the face of a statute allowing attorney's fees if they are defeated must take into account the time and effort they exact from their opponents.' It was Uniroyal's right to contest every aspect of this claim, but they cannot now disclaim the consequences of their actions.

509 F.Supp. at 460.

Likewise, Uniroyal's defense on appeal was equally spirited. Uniroyal retained top counsel and cross-appealed in an attempt to further reduce this Court's award of attorneys' fees. After having suffered a substantial setback in this Court's decision in *Chrapliwy* I, the plaintiffs cannot be faulted for zealously pursuing relief in the Court of Appeals. At stake were attorneys' fees for eight difficult years of litigation. "This Court does not fault defendant for defending itself tenaciously but finds that, having vigorously contested the attorneys' fee issue, it is scarcely in a position to complain that plaintiffs responded in kind." *Laffey, supra* 572 F.Supp. at 370, 32 Empl. Prac.Cas. (BNA) at 783. *See also Copeland v. Marshall*, 641 F.2d at 904 ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiffs in response"); *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir.1977) ("Obviously, the more stubborn the opposition, the more time would be required" by the other side.)

Nonetheless, it does appear that plaintiffs indulged in a certain amount of "overkill" in the preparation of their appeal. Carefully scrutiny of the hours submitted by plaintiffs' attorneys for appellate litigation is necessary.

■ Initially, this Court denies compensation to Attorneys Mick (8 hours) and Fette (8 hours) for their attendance at oral argument. Plaintiffs had 4 attorneys at oral argument, and while two attorneys is conceivably justifiable, four is not. *See Copeland v. Marshall*, 641 F.2d at 891 ("... [W]here three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.") Attorneys Mick and Fette are denied compensation for attendance at oral argument. Uniroyal does not contest the presence of Blumrosen and this Court finds that the presence of Blumrosen at oral argument was justifiable.

This Court is also deeply concerned about the excessive hours billed by lead counsel Ewald. On 34 occasions, Ewald has billed for 10 hours or more. On 17 occasions, Ewald has billed for 12 hours or more. Ewald has billed for one 20 hour day as well as 8 days wherein the hours which Ewald billed equaled or exceeded 15 hours.

Recent caselaw emphasizes the need of attorneys to exercise billing judgment. In *Hensley v. Eckerhart, supra* — U.S. at —, 103 S.Ct. at 1939, 31 Fair Empl.Prac. Cas. (BNA) at 1173, Justice Powell noted:

In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. *Hours that are not properly billed one's client also are not properly billed to one's adversary pursuant to statutory authority.*

(emphasis added) *See also Laffey, supra* 572 F.Supp. at 361, 32 Fair Empl.Prac.Cas. (BNA) at 776, where the application for attorneys' fees contained a "description of the hours that were excluded from the application in the exercise of 'billing judgment.' " In *Ramos v. Lamm, supra* at 553, the 10th Circuit recently noted:

In determining which hours reported were reasonably expended and hence are billable to the adversary, the court should examine the total number of hours reported by each lawyer. While some private firm lawyers bill more than 2000 hours per year, studies indicate that 1400 to 1600 billable hours per associate and 1200 to 1400 per partner represents

the per annum norm that can actually be billed. *See, e.g., ABA Standing Committee on Economics of Law Practice, Administrative and Financial Management in a Law Firm* 2, 6 (Economics of Law Practice Series Pamphlet 10, 1965). *These totals break down to six to seven billable hours per day for a five day week.* During trials and other times of unusual stress the number of billable hours no doubt increases considerably. These studies reflect that normal workdays for lawyers include time to read general mail and advance sheets, to engage in nonbillable conversations with other lawyers, and to indulge in coffee breaks and other personal activities. *The court should question reported time significantly in excess of the norm.*

(emphasis added).

It is evident that Ewald has failed to exercise billing judgment in the hours submitted to this Court for compensation. This Court realizes that Ewald works for a large Washington law firm, and that long hours are common in the competitive markets of large cities. More to the point, Ewald was lead counsel in the present litigation and as such, had substantial responsibilities both to this case and to his clients. No doubt, situations arose where deadlines had to be met and extra hours were worked by all attorneys involved. However, the question is not how many hours did one work, but how many hours are properly billed to one's clients. Would Ewald have submitted these hours to a private client, at the rate of $175? We think not.

■ A day with 10 billable hours, while extraordinary, will occasionally occur. But 17 days where billable hours equaled or exceeded 12 hours is not justifiable. A 20

hour day is questionable. A reduction in Ewald's hours is necessary. After careful review of the time records submitted by Attorney Ewald, this Court feels that a 10% reduction in the hours for which Ewald seeks compensation will adequately trim the excess "fat" from Ewald's time records, yet also serve to compensate Ewald for his legal services. Attorney Ewald's compensable hours are therefore reduced by the figure of 124.15 hours.[6]

d). Motions on which plaintiffs did not prevail.

■ Uniroyal contends that plaintiffs are not entitled to compensation for two motions on which they did not prevail before the Court of Appeals. This Court disagrees.

Plaintiffs moved to strike Uniroyal's reply brief. Although this motion was denied, the Seventh Circuit stated:

... Although the plaintiffs have not prevailed on all issues argued, we consider the time spent to address issues on which they have not prevailed to have been reasonably expended.

(footnote omitted) 670 F.2d at 771. This Court concludes, consequently, that plaintiffs are to be compensated for hours spent on the motion to strike Uniroyal's reply brief.

Plaintiffs additionally filed two motions in response to Uniroyal's motion to stay the issuance of a mandate pending their petition for a writ of certiorari. Uniroyal suggests that such motions, which sought the issuance of the mandate, were so clearly contrary to the controlling language of Rule 41(b) that no compensation ought be allowed for hours spent in the preparation of such motions. However, Wright & Mil-

---

6. The determination of what reduction would be appropriate rests in this Court's sound discretion. *See Chrapliwy* II, *supra* at 765, *Coop v. City of South Bend,* 635 F.2d 652, 655 (7th Cir. 1980). Percentage reduction is inherently imprecise but no better method presents itself. Suffice it to say that if this Court reduced Ewald's excessive hours to 9 hours per day, a still generous figure, Ewald's overall hours would be reduced by slightly more than 125 hours.

Additionally, there are other discrepancies in Ewald's time records and the records of co-counsel which indicate that a reduction of 10% is proper. While a substantial reduction, this Court cannot escape the conclusion that Ewald has failed to exercise billing judgment.

ler indicate that opposition to motions for the stay of mandate is quite common:

> The rule [41(b)] obviously contemplates that the other party may oppose the motion, as indeed they do on occasion. In fact, the grant of a motion to stay the mandate in such circumstances is far from a foregone conclusion.

16 C. Wright, A. Miller, E. Cooper, and E. Gressman, *Federal Practice and Procedure.* § 3987, p. 475 (1977).

This Court concludes that plaintiffs' opposition to Uniroyal's attempt to obtain a stay of mandate was not frivolous.[7] Plaintiffs' counsel will be compensated for hours spent on motions on which plaintiffs did not prevail.

### e). Quality Award of $150,000

■ In addition to the substantial lodestar figure awarded by this Court for appellate litigation, plaintiffs request a risk and quality award of $150,000. Plaintiffs contend that such a substantial award is warranted in light of the risks on appeal and the high quality legal services provided. For the reasons enumerated below, this Court declines to award a bonus for plaintiffs' appellate litigation.

Initially, this Court finds that the risks upon appeal were minimal. The merits of this case were fully resolved at the district court level; the sole remaining issue on appeal was the determination of attorneys' fees. After their victory on the merits in the district court, plaintiffs' attorneys were assured of compensation; the issue was simply *how much.* As the Tenth Circuit recently noted in *Ramos, supra* at 558:

> Once a case has been won in the district court, the risk of nonrecovery diminishes greatly, even though there may be an

appeal. In the instant case, recovery of some attorney's fees was certain after our appellate decision. A contingency bonus should not be given for hours expended ... to establish the amount of the attorneys' fee award.

*See also Northcross v. Board of Education,* 611 F.2d 624, 638 (6th Cir.1979) ("... [O]nly a portion of the time expended can be reasonably regarded as contingent; once liability is established the attorney is assured of compensation for establishing the appropriate remedy, monitoring the decree, and recovering his fee.") Additionally, the high hourly rates charged by plaintiffs' counsel compensate plaintiffs for the risks incurred during the course of the appellate litigation. This Court questions the use of a multiplier or quality award where the sole contested issue is the calculation of attorneys' fees.

Plaintiffs also suggest that a quality award is appropriate in light of the high quality legal services rendered upon appeal and the results achieved. However, the high hourly rates billed by plaintiffs' counsel substantially compensate them for the quality services provided. This Court cannot say that plaintiffs' success at the Court of Appeals was exceptional within the meaning of *Hensley.*[8]

### f). Printing costs in the Supreme Court

Uniroyal has agreed to pay plaintiffs' printing costs in the Supreme Court. If this has not already been done, defendant Uniroyal will now do so.

### *Conclusion*

In summation, this Court's calculation of attorneys' fees is as follows:

---

**7.** Plaintiffs are not to be faulted in desiring that the mandate issue after 11 very lengthy years of litigation. Additionally, the hours at issue here are minimal, while the benefits to the plaintiffs, through issuance of the mandate, were substantial. Additionally, this Court has examined the motions filed by plaintiffs as well as the supporting caselaw and finds that the motions are not frivolous.

**8.** This Court does not belittle the accomplishments of plaintiffs' counsel, nor the high quality legal services they rendered before this Court and the Court of Appeals. But quality awards are not to serve as a windfall for attorneys, rather, they serve to insure that attorneys are properly and fully compensated. The results achieved on appeal were not extraordinary within the meaning of *Hensley* or even, extraordinary by comparison with plaintiffs' attorneys' success before this Court in *Chrapliwy* I.

1. District Court lodestar figure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,547,471
   (Amount outstanding, 36,703, plus interest)
2. Quality Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100,000
3. Risk Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50,000
4. Total District Court Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,697,471

### Lodestar for Appellate Litigation

| Attorney | Rate Per Hour | Hours Requested | Hours Allowed | Total |
|---|---|---|---|---|
| Ewald | $175 | 1,241.5 | 1,117.35 | 195,536.25 |
| Boyd | $125 | 174.5 | 139.6 | 17,450.00 |
|  | $135 | 67.25 | 53.8 | 7,263.00 |
|  | $140 | 29.75 | 23.8 | 3,332.00 |
| Mick | $ 75 | 304 | 291 | 21,825.00 |
| Blumrosen | $200 | 107 | 107 | 21,400.00 |
| Fette | $ 80 | 158.05 | 150.05 | 12,004.00 |
| Stern | $165 | 14 | 14 | 2,310.00 |

Lodestar for appellate litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 281,120.25
Printing costs in the Supreme Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,506.97
Total award for litigation before the Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . 285,627.22
Total Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,983,098.22

For the reasons enumerated above, this Court determines that Uniroyal owes $36,-703, plus interest, on the district court lodestar figure, and $285,627.22 for appellate litigation. In sum, the total award for the 11 years of *Chrapliwy* litigation is $1,983,-098.22.

This Court reiterates that this Court's breakdown of attorneys' hours is advisory, and final distribution rests in the discretion of the attorneys involved. To the extent that Uniroyal, during the pendency of these proceedings, has paid any or all of the sums due, such payment is to be credited against the sums owed.

Judgment is entered against Uniroyal as enumerated above.

SO ORDERED.