**Jennifer LOPER and William Kaye, on behalf of themselves and all other persons who are similarly situated, Plaintiffs,**

v.

**NEW YORK CITY POLICE DEPARTMENT, and Lee P. Brown, as the Commissioner of Police of the New York City Police Department, Defendants.**

No. 90 Civ. 7546 (RWS).

United States District Court, S.D. New York.

May 24, 1994.

George Sommers, New York City and Hoboken, NJ, for plaintiffs.

Paul A. Crotty, Corp. Counsel, New York City (Paul Marks, Bruce Rosenbaum, of counsel), for defendants.

## *OPINION*

SWEET, District Judge.

Plaintiffs Jennifer Loper and William Kaye, on behalf of themselves and the class they represent (collectively the "Plaintiffs"), move for an award of attorney fees and expenses pursuant to 42 U.S.C. § 1988. Defendants New York City Police Department ("NYPD") and Lee Brown, the former Commissioner of NYPD, (collectively, the "Defendants") oppose Plaintiffs' award request.

### The Parties, Facts and Prior Proceedings

The parties, facts and prior proceedings in this class action suit are fully set forth in the prior Opinions of this Court, familiarity with which is assumed. *See Loper v. New York City Police Dep't,* 999 F.2d 699 (2d Cir.1993) ("*Loper VI* "); *Loper v. New York City Police Dep't,* 802 F.Supp. 1029 (S.D.N.Y.1992) ("*Loper V* "); *Loper v. New York City Police Dep't,* 785 F.Supp. 464 (S.D.N.Y.1992) ("*Loper IV* "); *Loper v. New York City Police Dep't,* 90 Civ. 7546, 1991 WL 135631, 1991 U.S.Dist. LEXIS 9547 (S.D.N.Y. Jul. 16, 1991) ("*Loper III* "); *Loper v. New York City Police Dep't,* 766 F.Supp. 1280 (S.D.N.Y. 1991) ("*Loper II* "); *Loper v. New York City Police Dep't,* 135 F.R.D. 81 (S.D.N.Y.1991) ("*Loper I* "). A brief review of those facts and prior proceedings relevant to the instant motions is presented below.

The Plaintiffs filed this and a companion state action on November 23, 1990. The parties agreed to stay the state action pending the resolution of this lawsuit. In their Complaint, the Plaintiffs sought a declaration that an anti-loitering statute—N.Y.Penal Law § 240.35(1) (the "Statute")—and the Defendants' enforcement of it violated the First, Eighth, and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983. They also sought relief under the New York State Constitution.

At the time they filed this action, the Plaintiffs requested that it be maintained as a class. Their request was granted on April 2, 1991, provided the Plaintiffs submitted a suitable definition of the term "needy." *Loper I,* 135 F.R.D. 81, 83 (S.D.N.Y.1991). On April 8, 1991, the Plaintiffs provided a further definition of "needy," which was accepted subject to modification as the facts developed. *Loper III,* No. 90 Civ. 7546, 1991 WL 135631, at *2, 1991 U.S.Dist. LEXIS 9547, at **4–6 (S.D.N.Y. July 16, 1991). Together, *Loper I* and *Loper III* define a Plaintiff Class consisting of all those "needy persons who live in the State of New York, who beg on the public streets or in the public parks of New York City," where a "needy person" is defined as "someone who, because of poverty, is unable to pay for the necessities of life, such as food, shelter, clothing, medical care, and transportation." *Id.* 1991 WL 135631 at *2, 1991 U.S.Dist. LEXIS at *5.

Both parties moved for summary judgment in February 1991, before any significant discovery had taken place. Their motions were denied with leave to renew upon further discovery on June 17, 1991. *Loper II,* 766 F.Supp. 1280 (S.D.N.Y.1991). On November 19, 1991, the Plaintiffs again moved for summary judgment prior to the close of the discovery period. This motion was denied without prejudice as well, principally on the ground that the City had raised a question of fact concerning its enforcement scheme. *Loper IV,* 785 F.Supp. 464 (S.D.N.Y.1992).

The Defendants filed their last motion for summary judgment on April 21, 1992, the Plaintiffs in the meantime having filed a motion for additional discovery. The Plaintiffs' motion was granted in part, and the Defendants were ordered to turn over additional data to the Plaintiffs, primarily concerning the number of summonses the Department has issued under the Statute. The Plaintiffs subsequently filed a cross-motion for summary judgment which was granted in *Loper V,* 802 F.Supp. 1029 (S.D.N.Y.1992).

In *Loper V,* 802 F.Supp. 1029 (S.D.N.Y. 1992), this Court declared that the named Plaintiffs have standing, *id.* at 1035–36, that begging is entitled to First Amendment protection, *id.* at 1036–38, and that the Statute is unconstitutional, *id.* at 1038–47, and permanently enjoined the Defendants from enforcing the Statute, *id.* at 1048. The Second Circuit affirmed the holding of *Loper V* in *Loper VI,* 999 F.2d 699 (2d Cir.1993).

In light of the Second Circuit's affirmance, the Plaintiffs are "prevailing parties" within the meaning of 42 U.S.C. § 1988. As such, Plaintiffs now seek the following attorneys fees and costs:

| Hours | Rate | Lodestar | Upward Adj. |
|---|---|---|---|
| 963.84 | $300.00 | $289,152 | $433,728 |

In addition, Plaintiffs seek expenses of $1,923.42 and additional fees for the 118 hours expended in the course of this fee application.

Defendants oppose the Plaintiffs' fee application on the following grounds: (1) excessive hourly rate; (2) inflated number of billa-

ble hours; (3) lack of specificity in hours that are billed; (4) inappropriate request for compensation of travel time and clerical work; (5) enhancements are unjustified; and (6) incorrect calculation of costs and expenses. According to the Defendants, the Plaintiffs' counsel is entitled to only $64,847.92 in fees and $1,063.40 in expenses.

Although oral argument was heard on February 23, 1994, supplemental briefs and letter briefs were received by the Court through March 22, 1994, and the application was considered fully submitted as of that date.

### Discussion

The sole issue before this Court is the determination of a reasonable amount of attorneys' fees to be awarded to the Plaintiffs in this action. This issue is considered in light of the Supreme Court's admonishment that "[a] request for attorneys' fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). On a fee application, the claimant has the initial burden of documenting and proving its claims. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Although a fee application hearing is a possibility, to the extent that the Plaintiffs have met their burden in the moving papers, their fee application is granted, in part, pursuant to the parameters set forth below.

### I. Reasonable Hourly Rates

■ Generally, in awarding attorneys' fees under federal civil rights fee-shifting statutes, courts are directed to use the lodestar method. *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The law of this Circuit further specifies that "the starting point of every fee award ... must be a calculation of the attorney's services in terms of the time he [or she] has expended on the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) ("*Grinnell I*"). In *Grinnell I*, the Court of Appeals established what is known as the lodestar approach whereby a court multiplies the number of hours reasonably expended by a reasonable hourly rate to arrive at a reasonable attorneys' fee award.

*Grinnell I*, 495 F.2d at 470–71; *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988).

■ In setting the hourly rates of attorney fees, courts should use the prevailing market rates of the relevant legal community. *See Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984) (holding attorneys must demonstrate their fees are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."); *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 408–09 (2d Cir.1987) (stating courts may apply prevailing market rates for "Wall Street" associates to fee award for non-profit organization).

The relevant community for fee determination is the judicial district in which the trial court sits, *see In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987), in this case, the Southern District of New York. *See also Shlomchik v. Richmond 103 Equities Co.*, 763 F.Supp. 732, 743–44 (S.D.N.Y.1991) (awarding suburban Philadelphia attorney a higher New York City rate as action was litigated in Southern District); *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir.1987) (judge may determine reasonable fees based on his or her knowledge of prevailing community rates); *McGuire v. Wilson*, 87 Civ. 6161, 1994 WL 68222, at *3, 1994 U.S.Dist. LEXIS 2000, at **7–9 (S.D.N.Y. Feb. 28, 1994) (awarding Long Island law firm fees at New York City rate levels for Southern District litigation).

■ Fees will be based upon the relevant market place, New York City, as this action was litigated in the Southern District of New York, notwithstanding that Plaintiffs' counsel maintains his office in Hoboken, New Jersey. The action concerns a New York City Statute and was initiated against the New York City Police Department, on behalf of a class, most of whom are presumably New York City residents. As the work was only conducted in the previous three and a half years, it is appropriate to use current,

and not historic, rates, *see New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir.1983), and no fee augmentation will be awarded.

■ Plaintiffs' counsel supports his $300 an hour rate request with documentation as to his qualifications, background, training as well as information concerning his expertise in the area of First Amendment and general litigation. (Pls.' Letter of November 11, 1993.) Plaintiffs' counsel has submitted photocopies of large firm rate ranges for New York City. (Pls.' Certification Ex. C.)

Plaintiffs' counsel is now seven years out of law school and an acknowledged First Amendment litigator. The fact that this case presented and helped develop an interesting and complex area of constitutional law must also be considered in reviewing the rate request. Accordingly, Plaintiffs' counsel will be awarded an hourly fee of $250 per hour, a rate commensurate with fee awards at the partner level in this District, which appears to be more than a reasonable rate award for a sole practitioner of intermediate experience. *See, e.g., Cabrera v. Fischler*, 814 F.Supp. 269 (E.D.N.Y.1993) (awarding $200 per hour; citing civil rights cases fee awards ranging from $175–$250), *aff'd in part, rev'd on other grounds*, 24 F.3d 372, 393, 1994 U.S.App. LEXIS 10,276, at *61 (2d Cir.N.Y. 1994).[1] *See also Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 85 (S.D.N.Y.1994) (awarding fee range $250 to $300 for experienced partners; $120 to $180 for associates over three year time period); *McGuire v. Wilson*, 87 Civ. 6161, 1994 WL 68222, at *3, 1994 U.S.Dist. LEXIS 2000, at **7–9 (S.D.N.Y. Feb. 25, 1994) (awarding fee range $190 to $225 per hour for partners, and $105 to $160 per associates for two year time period).

■ There remain two additional minor points raised by the Defendants concerning Plaintiffs' counsel reasonable hourly compensation. First, the Defendants claim that Plaintiffs' counsel should not be reimbursed at his lawyer rates for clerical work that he himself conducted. Regardless of who performed such tasks, $250 an hour is excessive compensation for clerical work. Therefore, Plaintiffs' counsel will be reimbursed for 55.08 hours of billed clerical work at a reasonable paralegal billing rate for such activities, that is a range of $70 to $85 per hour. *See Missouri v. Jenkins*, 491 U.S. 274, 286–89, 109 S.Ct. 2463, 2470–72, 105 L.Ed.2d 229 (1989) (holding paralegals and law clerks may be billed separately at market rates pursuant to local market practice).

■ Second, Defendants object to the remuneration of Plaintiffs' counsel at full hourly rate for time expended in traveling to and from Manhattan. Here, too, a rate reduction is appropriate and Plaintiffs' counsel's travel time of 30 hours will be compensated at 50% of his hourly rate. *See, e.g., Jennette v. City of New York*, 800 F.Supp. 1165, 1170 (S.D.N.Y.1992) (reducing hourly rate fee by 50% for attorney travel time); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1296, 1321–22, 1349 (E.D.N.Y.1985), *aff'd in part & rev'd in part*, 818 F.2d 226 (2d Cir.1987).

## II. *Plaintiffs' Counsel Describes Services Rendered With Adequate Specificity*

■ A fee application must be supported by contemporaneous time records which describe with specificity the work done. *New York State Assoc. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983). The "burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need

---

**1.** *Cf. Ortiz v. Regan*, 777 F.Supp. 1185 (S.D.N.Y. 1991) ($250 per hour), *aff'd in part and rev'd in part on other grounds*, 980 F.2d 138 (2d Cir. 1992); *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1477, 1481 (E.D.N.Y.1989) (awarding Farrell, Fritz $150 to $250 per hour for partners; $50 to $120 per hour for associates for work performed in 1988), *rev'd on other grounds*, 907 F.2d 1295, 1326 (2d Cir.1990); *Williams v. City of New York*, 728 F.Supp. 1067 (S.D.N.Y.1990) ($200 per hour for work performed in 1988–89); *Suarez v. Ward*, 88 Civ. 7169, 1993 WL 158462, 1993 U.S.Dist. LEXIS 6308 (S.D.N.Y. May 13, 1993) ($200 per hour for work performed in 1988–92); *Carrero v. New York City Hous. Auth.*, 685 F.Supp. 904 (S.D.N.Y. 1988) ($150 per hour for less experienced attorneys), *modified*, 890 F.2d 569, 581–82 (2d Cir. 1989); *Wilder v. Bernstein*, 725 F.Supp. 1324 (S.D.N.Y.1989) ($200–250 per hour for work performed in 1987–89), *rev'd on other grounds*, 944 F.2d 1028 (2d Cir.1991).

for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987) (rejecting time records with one word descriptions for an entire day's work). The Supreme Court has found that "counsel, of course, is not required to record in great detail how each minute of his [or her] time was expended[,] but at least counsel should identify the general subject matter of his [or her] time expenditures." *Hensley,* 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12. Plaintiffs' counsel's billing records meet this burden.

■ In *Orshan v. Macchiarola,* 629 F.Supp. 1014, 1019 (E.D.N.Y.1986), the court disallowed a claim for fees for time supported only by such vagaries as "prepare correspondence" and "review correspondence." However, such is not the case here. As a general matter, Plaintiffs' counsel's billing records list the date, the concise description of the work product, and the amount of time expended. As such, they appear to be detailed enough to meet the standard set forth by the Second Circuit.

■ Defendants further challenge the remuneration of Plaintiffs' counsel for hours billed for the preparation and argument of certain initial motions in this case on the theory that these motions were "unproductive." (Defs.' Mem. of Law at 18 (citing *Weisberg v. Coastal Gas Corp.,* 1982 WL 1311) (S.D.N.Y. June 16, 1982)). However, no such finding has been made by this Court, and in the absence of prejudicial or sanctionable conduct, Plaintiffs' counsel shall be duly awarded fees for work he conducted in the early stages of this litigation.

■ The Defendants next propose a 30% reduction in Plaintiffs' counsel's billable hours on the theory that counsel should not be compensated for allegedly excessive numbers of consecutive hours billed. (*See* Defs.' Mem. of Law at 19–20 (citing *Chrapliwy v. Uniroyal, Inc.,* 583 F.Supp. 40, 49 (N.D.Ind. 1983)); *Ramos v. Lamm,* 713 F.2d 546, 553 n. 2 (10th Cir.1983).) It is not unheard of for lawyers to work excessive hours prior to depositions, discovery dates and filing deadlines in the Southern District. In addition, a review of the billing record indicates that there were only twelve days during the time the case was before the District Court in which the Plaintiffs' attorney worked for more than ten hours. (*See* Defs.' Ex. C, Table 3.) Similarly, there were only twelve days during the time this action was on appeal that Plaintiffs' counsel billed over ten hours—all but one of those days was in the two weeks before filing the appellate brief. In light of the difficulty of the constitutional questions in this case, it is not unreasonable for an attorney in this region of the country to bill more than eight hours a day prior to court deadlines. Therefore, these hours will be compensated.[2]

## III. *Fee Enhancements Are Barred by Precedent*

■ Plaintiffs' counsel urges the Court to award a 50% upward enhancement from the lodestar calculations of his fees pursuant to the Supreme Court's statement that "in some cases of exceptional success an enhanced award may be justified." *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) ("*Hensley* ").[3] The party advocating such an en-

2. The Defendants' objections to certain specific billing entries cannot prevail in light of Plaintiffs' memorandum of law. The challenged items includes compensation for time reasonably expended on preparing homeless teenagers for depositions, the companion action, research on post-argument matters, moot court preparation for appellate argument and so forth. (*See* Pls.' Mem. of Law at 40–42, 44–46.)

3. Under the American Rule, a prevailing party generally is not permitted to collect fees from the loser. However, there are several exceptions to

this rule: (1) under Congressionally mandated fee-shifting statutes, such as 42 U.S.C. § 1988 here, the losing party may be forced to pay the "reasonable fees" of the prevailing party; (2) courts may assess fees in order to secure a party's compliance with the wilful violation of a court order; (3) courts may assess fees against parties who have acted in bad faith or vexatiously; and (4) the courts are empowered to assess fees in "common fund" cases which allow litigants to recover fees in securities or anti-trust cases. *See Pennsylvania v. Delaware Valley Citizens Council for Clean Air,* 478 U.S. 546, 561–62,

hancement bears the burden of proof in establishing that the enhancement is necessary for a reasonable fee award. *See United States Football League v. National Football League,* 887 F.2d 408, 413 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990).

However, since *Hensley,* the Supreme Court has extensively narrowed the circumstances in which an enhancement is available. The Court has "established a 'strong presumption' that the lodestar represents the 'reasonable fee'" under federal fee-shifting statutes. *See City of Burlington v. Dague,* — U.S. —, —, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (*Delaware Valley I* )). In addition, the Supreme Court has held that such factors as "the 'novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and cannot serve as independent bases for increasing the basic fee award." *Delaware Valley I,* 478 U.S. at 565, 106 S.Ct. at 3098 (quoting from *Blum v. Stenson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–50, 79 L.Ed.2d 891 (1984)).

The Court's evolving fees jurisprudence has resulted in the inevitable conclusion that all of the foregoing factors are now considered to be subsumed in the lodestar calculation. *See Dague v. City of Burlington,* 935 F.2d 1343, 1359 (2d Cir.1991) (*"Dague I"* ). As recently as 1991, the Second Circuit concluded that "[t]he enhancement possibility suggested by *Hensley* has thus eroded to the point where apparently the only thing that may still justify an enhancement is the contingency/risk factor" which was left open in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"* ). *See Dague v. City of Burlington,* 935 F.2d 1343, 1359 (2d Cir.1991) (dis-

cussing the Supreme Court's 4–1–4 split in *Delaware Valley II* which found no enhancement for risk in that case, but refused to flatly reject multipliers in all cases).[4] In *Dague I,* the Second Circuit reaffirmed its prior opinion in *Friends of the Earth v. Eastman Kodak Co.,* 834 F.2d 295 (2d Cir.1987) (holding that proper inquiry for fee enhancement concerns the risk of the litigation). *See Dague I,* 935 F.2d at 1360.

This was not the end of the matter, however. Upon review of the Second Circuit's determination in *Dague I,* the Supreme Court definitively held that "enhancement for contingency is not permitted under [ ] fee-shifting statutes" apparently shutting the enhancement door once and for all. *See City of Burlington v. Dague,* — U.S. —, — —, 112 S.Ct. 2638, 2643–44, 120 L.Ed.2d 449 (1992) (*"Dague II"* ); *see also Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1266 (D.C.Cir.1993) (finding "[i]n the context of the fee-shifting statutes, the lodestar approach but without enhancement for the *Johnson* factors has emerged as the prevailing method of fee calculation."); *King v. Palmer,* 950 F.2d 771, 784 (D.C.Cir.1991) (en banc) (barring the use of attorney fee enhancements in fee-shifting statute cases in D.C. Circuit), *cert. denied,* — U.S. —, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992).

A synthesis of *Dague I* and *Dague II* leads to the determination that fee enhancements under the fee-shifting statutes are no longer permissible in this Circuit. Therefore, Plaintiffs' request for an enhancement must be denied. *See, e.g., Amalgamated Clothing and Textile Workers Union v. Wal–Mart Stores,* 92 Civ. 5517, 1994 WL 74871, at *6, 1994 U.S.Dist. LEXIS 2548, at **21–22 (S.D.N.Y. Mar. 7, 1994) (stating "the Supreme Court ruled out the use of multipliers in statutory fee shifting cases by holding that a multiplier was not justified based upon a contingency risk" in *Dague II.*); *Dubin v. E.F. Hutton Group,* 845 F.Supp. 1004, 1014 (S.D.N.Y.1994) (finding *Dague II* "culminat-

562 n. 6, 106 S.Ct. 3088, 3096–97, 3097 n. 6, 92 L.Ed.2d 439 (1986).

**4.** The D.C.Circuit, in *Thompson v. Kennickell,* 836 F.2d 616, 621 (D.C.Cir.1988) described the

Court's somewhat unsettled position in *Delaware Valley II* as follows: "What, never? No, never!" for the plurality, and "What, *never?* Hardly ever!" for Justice O'Connor's concurrence.

ed a series of Supreme Court decisions restricting post-lodestar multipliers or fee enhancements in statutory fee shifting cases.").

There remains only three exceptions to the ban on fee enhancements in fee-shifting cases in the Second Circuit. First, in fee-shifting cases in which only a partial success is achieved a lodestar calculation may be downwardly enhanced, or more aptly, reduced. *See Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir.1992) (holding downward enhancements are possible, but not mandated), *cert. denied*, —— U.S. ——, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993);[5] *United States Football League v. National Football League*, 887 F.2d 408, 411–12 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990) (holding downward departure permitted where plaintiffs receive nominal damages).

Second, a fee enhancement may be permitted in fee-shifting statute cases in which there is an excessive delay in paying the attorney's fees. *See Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989) (holding in district court's discretion to adjust fees for delays in payment); *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir.1992) (same), *cert. denied*, —— U.S. ——, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993); *Huntington Branch, NAACP v. Town of Huntington*, 961 F.2d 1048, 1049 (2d Cir.1992) (same).

Finally, the Second Circuit has approved of the award of a risk multiplier when a court determines "as a matter of public policy, it is the type of case worthy of judicial encouragement." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir.1987). However, such "public policy" enhancements appear to have been upheld in, and are perhaps only applicable to, equitable fund cases and thus cannot be applied in the fee-shifting statute context. *See, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d at 234 n..2 ("While the lodestar formula applies to both types of cases, equitable fund cases may afford courts more leeway in enhancing the

lodestar, given the absence of any legislative directive."); *Dubin v. E.F. Hutton Group*, 845 F.Supp. 1004, 1014 (S.D.N.Y.1994) (holding that *Dague II* "does not prohibit post-lodestar fee enhancements in equitable fund cases" provided that they are awarded in the interest of encouraging the prosecution of "public policy" objectives which are "worthy of judicial encouragement.")

Although a "public policy" enhancement of attorneys' fees may still be permissible in a fee-shifting statute case in this Circuit, it is not appropriate in this case. As noted in *Loper V*, "[o]nly a handful of 'pure begging' arrests can be identified; the rest are either erroneously quantified or represent some other form of objectionable behavior." *Loper V*, 802 F.Supp. 1029, 1036 (S.D.N.Y.1992). Given the uncertainty concerning the actual number of people affected and the ambiguity of the actual harm caused, this case does not warrant judicial encouragement in the interest of public policy.

Accordingly, Plaintiffs' counsel's request for a 50% fee enhancement is denied.

## IV. *Expenses*

Plaintiffs' counsel has provided an adequate accounting of his expenses which ties the purported expenses with a specified legal product. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1269 (2d Cir.1987) (reducing award for expenses by 25% where records were "inadequate to permit a determination of the nature or timing of the activities that required most individual expenditures[.]"); *Carrero v. New York City Hous. Auth.*, 685 F.Supp. 904, 909–10 (S.D.N.Y.1988) (disallowing fees for inadequate documentation of expenses), *modified on other grounds*, 890 F.2d 569 (2d Cir.1989).

Upon review of Defendants' challenge to these expenses, (*see* Defs.' Mem. of Law Table 4, Ex. D), Plaintiffs' counsel is entitled to the full amount of his rather minimal expense claims, with a sole exception. Defendants are not required to reimburse

---

**5.** *Grant* is the only Second Circuit opinion concerning fee enhancements after the Supreme Court's ruling in *Dague II*. As the issue presented there concerned a proposed downward adjustment, it does not shed light on the Circuit's law regarding upward enhancements in a post-*Dague II* regime.

Plaintiffs' counsel for his distribution of copies of briefs and so forth to individuals unrelated to this action. (*See, e.g.,* Defs.' Mem. of Law, Ex. D, Table 4, Entries numbers 422, 424–29, 434, 587, 588, 600, 605, 642.)

### Conclusion

Plaintiffs' counsel's fee application is hereby granted in conformance with the findings set forth above. Settle order on notice.

It is so ordered.