TVT RECORDS and TVT Music, Inc., Plaintiffs,

v.

The ISLAND DEF JAM MUSIC GROUP and Lyor Cohen, Defendants.

No. 02 Civ. 6644(VM).

United States District Court, S.D. New York.

March 4, 2003.

James E. d'Auguste, James Philip Chou, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City, Peter L. Haviland, Rhonda R. Trotter, Los Angeles, CA, for plaintiffs.

Michael T. Mervis, Robert J. Eddington, Alexander Kaplan, Proskauer, Rose, L.L.P., Mary Mulligan, New York City, for defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs TVT Records and TVT Music, Inc. (collectively "TVT") appeal to this Court from a ruling by Magistrate Judge Debra Freeman rendered on February 10, 2003 and memorialized in a written Order dated February 28, 2003 (the "Privilege Ruling"), a copy of which is attached and incorporated hereto, regarding disclosure of documents identified as privileged respectively by TVT and defendants, The Island Def Jam Music Group and Lyor Cohen ("Cohen," and collectively with The Island Def Jam Music Group, "IDJ"). In this connection, the Court has reviewed the objections to Magistrate Judge Freeman's decision set forth in TVT's letter dated February 19, 2003, and accompanying exhibits; IDJ's response dated February 24, 2003, and accompanying exhibits; the transcripts of the conferences Magistrate Judge Freeman conducted with the parties on December 23, 2002, February 10, 2003, and February 20, 2003; the standards and guidance Magistrate Judge Freeman employed in determining the applicability of the attorney-

client privilege as to particular documents; and the case law and other authorities cited by the parties in support of their respective arguments, as well as those relied upon by the Magistrate Judge as legal standards governing her ruling.

The Court finds that Magistrate Judge Freeman has meticulously examined the documents in contention and thoroughly considered the parties' dispute with regard to them, laboring under the exhaustive burden that the parties' scorching litigation tactics here have wreaked upon each other and upon this Court. Overall, the Court agrees with the findings, reasoning and conclusions of Magistrate Judge Freeman on most of the documents at issue. Accordingly, the discussion that follows will address only those documents and corresponding portions of the Privilege Ruling with respect to which this Court arrives at a different conclusion. As to the rest, this Court agrees with and affirms Magistrate Judge Freeman's findings and conclusions.

## *DISCUSSION*

### A. *LEGAL STANDARD*

■ The attorney-client privilege was designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 393, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *see In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2nd Cir.1984). Because the privilege "stands in derogation of the public's right to every man's evidence . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2nd Cir.2000) (citation omitted; internal quotations omitted). The Second Circuit has explained that

(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from

disclosure by himself or by the legal advisor, (8) except [where] the protection [is] waived. . . .

*In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d at 1036. Under New York law, the party invoking the privilege "must demonstrate that the information at issue was a communication between client and counsel or his employee, that it was intended to be and was in fact kept confidential, and that it was made in order to assist in obtaining or providing legal advice or services to the client." *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470–71 (S.D.N.Y.1993).

■ Application of this doctrine is complicated in situations where communications claimed to be privileged involve in-house as opposed to outside counsel because "in-house attorneys are more likely to mix legal and business functions." *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 220 F.Supp.2d 283, 286 (S.D.N.Y.2002) (citation omitted). The Second Circuit has made clear that only those communications related to "legal, as contrasted with business, advice" are protected. *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d at 1037; *see In re John Doe Corp.*, 675 F.2d 482, 488 (2nd Cir.1982).

### B. *DOCUMENTS WITHHELD BY TVT*

This Court is in agreement with and affirms Magistrate Judge Freeman's findings and conclusions regarding the documents withheld by TVT.

### C. *DOCUMENTS WITHHELD BY IDJ*

At the outset the Court notes a consideration that adds an additional layer of difficulties to the already close judgment calls entailed in the determinations of attorney-client privilege regarding many of IDJ's documents. IDJ's transactions with TVT at issue here, and the bulk of the communications associated with them as to which IDJ invokes the attorney-client privilege, were conducted by two in-house attorneys, Jeffrey Kempler ("Kempler") and Jonathan Lieberman ("Lieberman"), whose positions at IDJ at the relevant times were Senior Vice President of Business and Legal Affairs and Vice Presi-

dent of Business and Legal Affairs, respectively. As the titles indicate, these representatives served within the company not only as lawyers, but as high-ranking management executives. As such, it is not always readily discernable in what capacity they may have been functioning at the time they participated in particular communications, whether as lawyers or business managers. In some instances it appears clear to the Court that in the exchanges in question these employees convey information, advice or instruction from their capacities as business executives rather than as lawyers. Insofar as IDJ endeavors to assert a blanket privilege for large portions of the communications of Kempler and Lieberman merely because they were in-house attorneys, the Court finds that invocation of the privilege overly broad.

■ Exhibit B to the Declaration of Jeffrey Kempler dated December 16, 2002[1] (IDJ–PRIV 003–004)[2] consists of a series of three e-mails in which Lieberman, seeks permission to and directs the execution of a check for $200,000 to Irv Gotti ("Gotti") as a profit advance. These e-mails include background information explaining the reasons for this advance as well as contemplated repayment plans. The discussions address business strategy and negotiations and include no legal strategy or advice. They are not protected by the attorney-client relationship and must be disclosed.

The documents attached as Exhibit C to the Kempler Decl. (IDJ–PRIV 002, 005, 009–012, 043, 052, 054, 062, 065, 069, 071, 072–75, 081, and 093) consist of a series of e-mails among various IDJ employees, including attorneys Lieberman and Kempler. Regarding IDJ–PRIV 002, Lieberman is asking Cohen whether IDJ will accept a 25 percent share of the profits from CMC Album sales. This question is entirely business in nature and reflects no legal strategy or advice. Accordingly, this sentence is not privileged. Similarly, in the first sentence of paragraph 3, Lieberman asks Cohen why Cohen does not want Lieberman to discuss an alternative business deal with Steve Shapiro, Gotti's and Ja Rule's attorney. The paragraph then proceeds to discuss a rival offer by another record label. Again, no legal strategy or advice is presented in this paragraph. Rather, the business terms of two proposed business arrangements are discussed. Therefore, this paragraph, including the first sentence, is not privileged.

The remainder of the communications included in Exhibit C are also business in nature and include no legal strategy or advice. They generally concern the circumstances surrounding IDJ's advance of $200,000 to Gotti, whether IDJ had agreed, as of various points in time, to the collaboration with TVT, and what share of the profits IDJ would demand in return for its consent. These business discussions are not protected by the attorney-client relationship, and, therefore, the remainder of the documents included in Exhibit C are not privileged.

Exhibit D to the Kempler Decl. (IDJ–PRIV 053) consists of an e-mail from Lieberman to William Leibowitz ("Leibowitz"), TVT's attorney, asking for a written confirmation of TVT's agreement to a specific profit sharing arrangement, as well as Kempler's reply that the matter of a distribution fee can be determined at another time. There is no legal advice or strategy contained in these communications, which, accordingly, are not protected by the attorney-client relationship.

IDJ–PRIV 042, appearing in Exhibit E to the Kempler Decl., includes an e-mail message in which Kempler suggests defining a particular profit arrangement in terms of a portion of overall earnings rather than as a function of total units sold. No legal strategy or explanation accompanies this suggestion, which therefore only addresses the characterization of a business term. Accordingly, this e-mail communication is not privileged.

1. Hereinafter, this document will be referenced as "Kempler Decl."

2. This Court adopts the nomenclature employed by Magistrate Judge Freeman in the Privilege Ruling. The documents over which TVT claims attorney-client privilege were submitted to the Court in a letter addressed to Magistrate Judge Freeman from Pamela Gurley dated December 12, 2002.

Regarding the documents included in Exhibit G to the Kempler Decl. (IDJ–PRIV 094, 103–114, 116–117), certain ones are privileged and others are not. Specifically, the highlighted portions of IDJ–PRIV 103, 106, 109, 110, 113, and 116 arguably contain matters of legal advice regarding, in particular, the need to obtain copyright clearances. Accordingly, these portions of these documents are privileged and may be redacted. Regarding IDJ–PRIV 094, much of the highlighted paragraph contains references to copyright clearances and ownership issues that arguably raise issues requiring legal advice. This portion is therefore protected by the attorney-client privilege. The rest of this paragraph, however, addresses business matters and judgments and is not privileged. Accordingly, the first full sentence beginning on line 2 of this paragraph, and the first full sentence beginning on line 3 of this paragraph, must be redacted.

The remainder of the documents appearing in Exhibit G contain e-mail conversations that involve the issue of copyright clearances. These conversations, however, do not address legal issues surrounding the requisite clearances but, rather, the effect that the time delay in obtaining them will have on business and logistical matters, including authoring the video at issue and distributing it nationally and internationally. Neither the content of these communications nor their context includes legal, as opposed to business, strategy or advice. Accordingly, these remaining documents are not privileged.

IDJ–PRIV 100–102, included in Exhibit K to the Kempler Decl., contain many seemingly irrelevant discussions concerning other business arrangements and transactions in which IDJ was involved. The only relevant portions appear to be numbered paragraphs 6 and 11 [3] within IDJ–PRIV 101–102, and the Court will restrict its review of IDJ's assertion of attorney-client privilege to these sections. The contents of these two paragraphs are largely descriptive, rather than advisory, in nature and do not reflect or relate to any request for, or rendering of, legal strategy or advice. Accordingly, they are not privileged.

Regarding the highlighted passage in IDJ–PRIV 125–127, also included in Exhibit K, this passage is not protected because it only generally references an issue relevant to the CMC project and because it contains no legal strategy or advice.

### *CONCLUSION AND ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that IDJ–PRIV 003–004 are not privileged; and it is further

**ORDERED** that paragraphs 2 and 3 of IDJ–PRIV 002 are not privileged; and it is further

**ORDERED** that IDJ–PRIV 005, 009–012, 043, 052, 054, 062, 065, 069, 071, 072–75, 081, and 093 are not privileged; and it is further

**ORDERED** that IDJ–PRIV 053 is not privileged; and it is further

**ORDERED** that IDJ–PRIV 042 is not privileged; and it is further

**ORDERED** that the highlighted portion of IDJ–PRIV 094 as it appears in Exhibit G to the Kempler Decl. is privileged in part such that the first full sentence beginning on line 2 of the highlighted paragraph and the first full sentence beginning on line 3 of the highlighted paragraph must be redacted; and it is further

**ORDERED** that the highlighted portions of IDJ–PRIV 103, 106, 109, 110, 113, and 116, as they appear in Exhibit G to the Kempler Decl., are privileged; and it is further

**ORDERED** that IDJ–PRIV 104, 105, 107, 108, 111, 112, 114, 115, and 117, as well as the remaining portions IDJ–PRIV 103, 106, 109, 110, 113, and 116, are not privileged; and it is further

**ORDERED** that numbered paragraphs 6 and 11 on IDJ–PRIV 101–102 are not privileged; and it is finally

**ORDERED** that the remainder of the Privilege Ruling is affirmed.

**SO ORDERED.**

---

**3.** Paragraph 11 includes two single-spaced blocks of text separated by a double spaced line. Only the discussion appearing in the first block is relevant.

**ATTACHMENT**

## MEMORANDUM AND ORDER

FREEMAN, United States Magistrate Judge.

It is now this Court's understanding that TVT has appealed certain of the Court's February 10 rulings to Judge Marrero. Because of the length of the transcript of the February 10 conference, and because trial in this matter is imminent, the Court issues this Memorandum and Order to aid both the parties and the Court in the appeal process. This Order will summarize this Court's prior rulings, and state any final rulings as to which the Court had reserved judgment during the parties' prior conference.

### DISCUSSION

The documents that both parties have sought to withhold appear, for the most part, to have been generated in connection with the negotiation of business transactions. Those transactions, however, were generally being negotiated after TVT expressed the desire to release recordings of a music artist apparently bound by exclusive contract to IDJ. In this lawsuit, TVT claims it had the right to release those recordings, and that actions allegedly taken by IDJ to prevent the release constituted unlawful interference with that right. For its part, IDJ claims that it was TVT that was interfering with IDJ's exclusive arrangements. In a charged climate of concern regarding how the parties should react to one another's wishes to release recordings of the same artist, attorneys for both parties became very involved in the ensuing "business" discussions.

Clients are entitled to communicate confidentially with their business lawyers, as much as with their litigation counsel, provided that the business lawyers are functioning in their capacity as lawyers, and that the advice being solicited or offered has a "legal" character. Where "legal advice of any kind is sought ... from a professional legal advisor in his capacity as such, [the] communications relating to that purpose [that are] made in confidence ... by the client" are protected by the attorney-client privilege. *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir.1997); *see also In re Grand Jury Subpoena*, 731 F.2d 1032, 1038 (2d Cir. 1984) (holding that communications seeking legal advice concerning the consequences of certain business decisions were protected by the attorney-client privilege). "In contrast, if the attorney is called upon to render solely business advice based on an expertise that is distinct from his legal calling, his communications with his client are plainly not protected." *Note Funding Corp. v. Bobian Investment Co., N.V.*, No. 93 Civ. 7427(DAB)(MHD), 1995 WL 662402, at *3 (S.D.N.Y. Nov. 9, 1995) (citations omitted). "Similarly, if the lawyer is serving as a business representative of his client, those functions that he performs in that capacity—such as negotiations of the provisions of a business contract or relationship—are not the source of a privilege." *Id.* (citations omitted).

Here, certain business deals—whether with the artist or between the parties—were being negotiated in a context where, given the parties' potentially inconsistent claims to recording rights, it made sense to have attorneys involved not just as business representatives, but also as legal advisors. Thus, the Court has generally accepted the parties' claims that their strategy discussions with counsel are entitled to protection as privileged communications. Where, however, the documents do not appear to reflect even attorney-client "strategy" discussions—where, for example, an attorney is merely conveying to his client the substance of what a third party has conveyed—the Court has not accepted the asserted claims of privilege. *See id.* at *4 (an attorney's "reporting of developments in negotiations, if divorced from legal advice, is not protected by the privilege"); *see also ECDC Environmental, L.C. v. New York Marine and Gen'l Ins. Co.*, No. 96 Civ. 6033(BSJ)(HBP), 1998 WL 614478, at *9 (S.D.N.Y. June 4, 1998) ("An attorney's communication to a client reporting facts learned by the attorney from a third party is not within the attorney-client privilege unless the information is included in legal analysis or advice communicated to the client.").

## I. DOCUMENTS WITHHELD BY TVT

TVT submitted 13 documents to the Court, which were not Bates numbered or otherwise numbered for submission. TVT, however, did provide a copy of its privilege log, which lists the documents in chronological order. For ease of reference, the Court will assign the documents numbers that match the order in which they are listed on TVT's log, as follows:

Document No. 1:    January 8, 2001 Note

Document No. 2:    May 17, 2001 Memorandum

Document No. 3:    May 24, 2001 Memorandum

Document No. 4:    July 10, 2001 E-mail (re: updates on different matters, including Cash Money Click)

Document No. 5:    July 10, 2001 E-Mail (re: Comments on discussion with Steve Shapiro)

Document No. 6:    July 30, 2001 E-mail

Document No. 7:    August 1, 2001 E-mail

Document No. 8:    August 3, 2001 E-mail

Document No. 9:    August 10, 2001 E-mail

Document No. 10:    October 3, 2001 E-mail

Document No. 11:    October 12, 2001 Memorandum

Document No. 12:    October 19, 2001 Facsimile

Document No. 13:    February 19, 2002 Memorandum

TVT has argued that, because it turned to "outside counsel" for advice (as opposed to inside, corporate counsel, who would more typically serve a dual role as legal and business advisor), its communications with counsel should be viewed as presumptively, and nearly *"de facto"* privileged. While TVT is correct that inside counsel may be less independent and more likely to play dual roles, *see Bank Brussels Lambert v. Credit Lyonnais,* 220 F.Supp.2d 283, 286 (S.D.N.Y.2002), the Court disagrees that the question of privilege should turn almost entirely on whether counsel was employed "inside" or "outside" the company. In either case, communications with counsel may or may not fall within the privilege.

TVT's Document No. 1 is not privileged, because it is a simple transmittal letter, which does not appear to be requesting any legal advice.

With respect to Document No. 2, it is the Court's understanding that paragraphs 1–3 are not relevant to this case and need not be produced on that ground. As for paragraph 4 and the remainder of the document, the communication is not privileged to the extent it merely relays the content of the attorney's conversation with a third party. The Court will permit the redaction, however, of the parenthetical question in the third line of paragraph 4, where counsel is seeking information from the client to better understand the situation.

Document No. 3 similarly does little more than relay a communication with a third party, and, to that extent, it is not privileged. TVT may, however, redact as privileged the last sentence of paragraph 8 and the entirety of paragraph 9, which appear to provide legal advice to the client.

With respect to Document No. 4, it is the Court's understanding that paragraph 2 is not relevant to this case and may be redacted on that ground. Paragraph 1 does not provide legal advice, and is therefore not privileged.

Document No. 5 merely relays counsel's communication with a third party, and is therefore not privileged.

Document No. 6 does contain a communication from counsel to the client that expresses the attorney's views. Although, at first glance, this communication appears to have more of a "business" than a "legal" character, the Court, after hearing TVT's argument, will accept that, when the communication is viewed in context, it is appropriate to consider it privileged.

Documents No. 7 and 8 again do nothing more than relay counsel's communications with a third party, and are therefore not privileged.

Document No. 9 apparently contains only one paragraph that is relevant to this case, paragraph 3. Although this paragraph is cryptic, the Court will accept that it contains a privileged communication.

Document No. 10 merely relays the content of counsel's communications with third parties, and is therefore not privileged.

Document No. 11 contains counsel's comments with respect to certain proposed contracts; as such, it appears to contain legal advice, and may therefore be withheld as privileged.

Document No. 12 consists of a fax cover sheet and attached contracts. Apparently, the contracts (which do not appear to be privileged in and of themselves) have already been produced. In listing both the cover sheet and contracts on its privilege log, TVT explained to the Court that it had taken a "global position" that any communications between the client and its outside counsel, even the mere transmittal of non-privileged documents, were privileged. There is no basis for that position. Here, TVT concedes that the contracts themselves are not privileged, and the cover sheet contains no substantive information whatsoever. None of these materials are therefore privileged.

Finally, the Court accepts that Document No. 13 is privileged, to the extent that counsel is explaining contractual provisions to his client, and giving the client direction. So as to protect such communications, the following portions of the document may be redacted: the second and third paragraphs, and the fourth paragraph, commencing with the parenthetical clause.

The Court notes that, following the February 10 conference, TVT asked the Court to reconsider its ruling with respect to the e-mails dated July 10, 2001 (presumably Document No. 5) and August 3, 2001 (Document No. 8). (*See* letter from Peter L. Haviland, Esq., to the Court, dated February 18, 2003.) According to TVT, these e-mails, which the Court viewed as relaying conversations with a third party, actually reflect that third party's "legal negotiation strategy." (*Id.*) While TVT apparently concedes that the e-mails attribute that strategy to a third party, TVT expresses concern that the documents might be misconstrued as suggesting that TVT "may have acquiesced" in the strategy described, or that TVT's own strategy was "consistent" with that of the third party. (*Id.*) Under the circumstances, TVT argues that, if the documents are disclosed, it might be required to disclose other attorney-client communications to rebut these incorrect inferences. (*See id.*)

A document, however, does not become privileged by virtue of another party's or witness's potential misperception of that document. Nor can a document be protected as privileged merely because its disclosure may result in a party's difficult strategy decision as to whether to waive privilege as to other communications. In a follow-up conference with the parties on February 20, 2003, the Court confirmed that TVT does not dispute the facts underlying the Court's initial ruling—*i.e.*, that the documents do not provide legal advice, but rather relay comments made by a third party. Accordingly, the Court sees no basis for modifying its initial ruling.

## II. *DOCUMENTS WITHHELD BY IDJ*

IDJ submitted numerous documents for *in camera* review by the Court. These documents were submitted as exhibits to a Declaration of Jeffrey Kempler, dated December 16, 2002 ("Kempler Declaration"). After the Court's initial review of both parties' submissions, the Court suggested that counsel re-review the documents, and consider withdrawing their privilege claims for documents containing what were plainly "business" communications. Although TVT did not withdraw any of its claims of privilege following the Court's suggestion, IDJ did, reducing significantly the number of documents that the Court then needed to consider.

The IDJ documents that the Court ultimately reviewed (submitted by IDJ with a cover letter from David A. Picon, Esq., dated February 7, 2003) are identified herein both as Kempler Declaration exhibits, and by "IDJ–PRIV" Bates numbers. According to IDJ, TVT was provided with these Bates numbers on IDJ's privilege log.

Any documents initially submitted as Exhibit A to the Kempler Declaration have been voluntarily produced and need not be considered.

Exhibit B to the Kempler Declaration (IDJ–PRIV 003–04) consists of a three-message e-mail "string," all of which are communications with counsel, although the e-mails

are also copied to some IDJ representatives who are not attorneys. These communications discuss strategy regarding how arrangements should be structured financially, and the consequences of a proposed course of action. Given the context of these communications, as described above (*see supra* at 144), the Court will accept them as privileged.

With respect to the documents attached as Exhibit C to the Kempler Declaration (IDJ–PRIV 002, 005, 009–012, 043, 052, 054, 062, 071, 065, 069, 072–75, 081, and 093), the Court rules as follows: It is the Court's understanding that paragraph 1 of IDJ–PRIV 002 is not relevant to this action, and may be redacted on that ground. Paragraph 2 (except for the last sentence) merely relays a conversation with a third party, and is therefore not privileged. The last sentence of paragraph 2, however, which IDJ has clarified to be a question from counsel to client regarding a proposed deal (*see* letter from David A. Picon to the Court, dated February 14, 2003 ("2/14/03 Picon Ltr.") at 1–2), may be redacted. As for paragraph 3, the Court will allow the redaction of the first sentence, which seeks client input. The rest of the paragraph should be produced, as it again merely relays a communication with a third party. The Court accepts IDJ's claims to attorney-client privilege as to the remainder of the documents included within Exhibit B, again given the context in which the communications arose.[1]

With respect to Exhibit D to the Kempler Declaration (IDJ–PRIV 053), only the top portion of the document is claimed to be privileged, and the Court accepts that privilege claim.

With respect to Exhibit E to the Kempler Declaration (IDJ–PRIV 017, 019, 021, 022, and 042), it is the Court's understanding that IDJ has withdrawn its claims of privilege with respect to documents IDJ–PRIV 017, 019, 021, and 022. (*See* 2/14/03 Picon Ltr. at 1.) IDJ has also withdrawn its claim of privi-

lege with respect to the bottom e-mail on IDJ–PRIV 042. (*See id.*) The Court will uphold the claim of privilege as to the top e-mail message on IDJ–PRIV 042.

Any documents initially submitted as Exhibit F to the Kempler Declaration have been voluntarily produced and need not be considered.

Exhibit G to the Kempler Declaration (IDJ–094, 103–14, and 116–17) are communications that were made in the course of the "clearance process" at IDJ, which, according to counsel, "involves a legal assessment of the rights IDJ must obtain in order to release every recording or video that the label (or, in the case of the e-mails in question, the M.I. Records LLC joint venture ...) puts out." (2/14/03 Picon Ltr. at 2.) A number of people are apparently involved in the clearance process, many of whom are not attorneys. (*See id.* at 2, n. 1.) IDJ explains that attorneys were routinely sent or copied on communications relating to clearance issues, so that they are aware of the issues that need to be addressed to avoid liability. (*See generally id.* at 2–3.)

"[T]he fact that a request to counsel [is] sent simultaneously to non-legal personnel should not by itself dictate the conclusion that the document was not prepared for the purpose of obtaining legal advice." *In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 253 (S.D.N.Y.2002). Further, documents may "qualify as privileged because they consist of 'information [sent] to corporate counsel in order to keep them apprised on ongoing business developments, with the expectation that the attorney will respond in the event that the matter raises important legal issues.'" *Id.* at 254 (quoting *In re Pfizer, Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993)). Here, with respect to the majority of the e-mail communications contained in Exhibits G and H, the Court is persuaded that, to the extent the messages were not directed to or from counsel, they were at least copied to counsel for the purpose of

---

1. The Court notes that, in one of the e-mail communications contained in IDJ–PRIV 005, the comment of a third party is reflected. In this instance, the comment is sufficiently enmeshed in the communication as a whole as to warrant a finding that the communication as a whole is privileged.

allowing counsel to respond to ongoing developments with legal advice. As such, they are appropriately protected as privileged. A few of the e-mail messages, however, do not even include counsel "in the loop" (*i.e.,* the April 29 and 30, 2002 messages among Randy Acker, Elise Mora and Carol Corless) (contained in IDJ–PRIV 104 and 105), and the Court sees no basis for finding that these messages are privileged.

Exhibit H to the Kempler Declaration (IDJ–PRIV 137–39) constitute e-mail communications between IDJ representatives and Charles Hamilton, Esq., who worked within the legal department of IDJ's parent, Universal Music Group, Inc. ("UMG"), although he did not function in the capacity of an attorney. (*See* letter from David A. Picon, Esq., to the Court, dated February 27, 2003 (2/27/03 Picon Ltr.), at 1–2.) The messages relate to whether or not the "Committee" (a group of UMG representatives, including its general counsel (*see id.*)) had "cleared" certain lyrics for use on recordings. The Court reserved decision on these documents pending receipt of an explanation by counsel as to the nature and functioning of the Committee, and as to Mr. Hamilton's role. In light of that explanation, as provided in Mr. Picon's February 27 letter, the Court does not find these documents to be privileged. For the most part, the documents merely indicate whether "clearance" has been obtained. To the extent any of the communications request additional information or indicate that clearance is still awaited, they do not reveal any specific issues as to which legal advice is being sought. Although "clearance" decisions can certainly be based on legal advice, these e-mails are sufficiently general that they do not reveal such advice; nor do they constitute requests for legal advice from counsel.

Exhibit I to the Kempler Declaration (IDJ–PRIV 118–19) consists of an e-mail message by an IDJ attorney to the client and other IDJ counsel, raising the question of whether a recent development might have consequences for the resolution of matters between the parties. The communication was then forwarded to another IDJ attorney, after this litigation had already commenced. Given the backdrop of the parties' developing dispute, and then the onset of actual litigation, the Court will uphold IDJ's claim of privilege as to this document.

Any documents initially submitted as Exhibit J to the Kempler Declaration have been voluntarily produced and need not be considered.

With respect to the documents attached as Exhibit K to the Kempler Declaration (IDJ–PRIV 100–02, and 125–35), it is the Court's understanding that much of the information contained in IDJ–PRIV 100–02 and 125–27 is irrelevant to this action and may be withheld on that ground. Relevant information can be found in paragraph 6 on IDJ–101 and paragraph 11 on IDJ–PRIV 102 (both of which involve counsel's summarizing the status of matters for the benefit of co-counsel), and the top e-mail on IDJ–125 (which, to the extent it refers to matters relevant to this action, involves a strategy communication between counsel and client). The Court will uphold the claim of privilege as to these communications. The remaining documents contained in Exhibit K (IDJ 128–34) constitute either communications among counsel that clearly reveal their work product as attorneys, or communications between counsel and client that plainly focus on legal issues and strategy. As such, they have been properly withheld from production.

Finally, the Court rejects IDJ's assertion that Exhibit L to the Kempler Declaration (IDJ–PRIV 140), which is a communication between IDJ's counsel and a third party (Irv Gotti), should be protected under the "common interest" rule. The common interest rule does not itself give rise to a separate privilege. *Bruker v. City of N.Y.,* No. 93 Civ. 3848(MGC)(HBP), 2002 WL 484843, at *4 (S.D.N.Y. Mar. 29, 2002). "Rather, it is a limited exception to the general rule that the attorney-client privilege is waived when a protected communication is disclosed to a third party outside the attorney-client relationship." *Id.* Here, the document at issue does not fit readily into this framework. Nonetheless, the Court has carefully considered IDJ's arguments that, with respect to the subject matter of the document, its inter-

est was so particularly aligned with that of Mr. Gotti's company at the time in question that the communication should be protected under the common interest rule. (*See* 2/14/03 Picon Ltr. at 3–4.) Despite IDJ's characterization of the document, however, it does not appear to reflect a common interest or strategy in defeating a claim by TVT, as IDJ now claims. The document should therefore be produced.

### CONCLUSION

For all of the foregoing reasons, and for the reasons set forth on the record of the February 10 and 20, 2003 discovery conferences, the parties should produce their withheld documents to the extent set forth above.

Dated February 28, 2003.

SO ORDERED.