TVT RECORDS, INC. and TVT Music, Inc., Plaintiffs,

v.

THE ISLAND DEF JAM MUSIC GROUP and Lyor Cohen, Defendants.

No. 02 Civ. 6644(VM).

United States District Court, S.D. New York.

Aug. 21, 2006.

James Philip Chou, James E. D'Auguste, Akin Gump Strauss Hauer & Feld LLP (NYC), New York, NY, Peter L. Haviland, Los Angeles, CA, Rhonda R. Trotter, Tuneen Elease Chisolm, Akin Gump Strauss Hauer & Feld LLP. Los Angeles, CA, for Plaintiffs.

Danna Drori, U.S. Attorneys Office SDNY, New York, NY, Mary Elizabeth Mulligan, Friedman Kaplan Seiler & Adelman LLP, New York, NY, Michael T. Mervis, Alexander Kaplan, Robert J. Eddington, Proskauer Rose LLP (New York), New York, NY, Paul George Gardephe, Patterson, Belnap, Webb & Tyler LLP, New York, NY, James M. La Rossa, New York, NY, Matthew Seldon Dontzin, Dontzin Law Firm LLP, New York, NY, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Defendant The Island Def Jam ("IDJ"), asserting that it has expended in excess of $4.8 million in connection with litigating

this action,[1] filed a motion for an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 and Federal Rule of Civil Procedure 54(d)(1). IDJ's application followed its successful defense on appeal against claims brought by plaintiffs TVT Records, Inc. and TVT Music, Inc. (collectively, "TVT") alleging copyright infringement, tortious interference and fraudulent inducement by IDJ and Cohen.[2] On IDJ's appeal of a jury verdict of liability and award of damages, the Court of Appeals for the Second Circuit reversed the judgment and remanded the case to this Court. *See TVT Records v. The Island Def Jam Music Group*, 412 F.3d 82 (2d Cir.2005). This Court stayed consideration of IDJ's application pending a decision on TVT's petition for a writ of certiorari, which the United States Supreme Court denied on June 26, 2006.[3] *See TVT Records v. Island Def Jam Music Group*, —— U.S. ——, 126 S.Ct. 2968, —— L.Ed.2d —— (2006). For the reasons discussed below, IDJ's application for an award of attorneys' fees and costs is denied.

## I. *DISCUSSION*

■ Section 505 of the Copyright Act (" § 505") authorizes the Court "in its discretion" to allow recovery of full costs and award a reasonable attorney's fee to the prevailing party in any infringement action brought under the statute. 17 U.S.C. § 505. To guide the courts' exercise of this discretion, the Supreme Court has recognized a list of "nonexclusive factors" applicable in assessing the basis for the underlying litigation. Among the considerations are: "frivolousness, motivation, objective unreasonableness (in both the factual and in the legal components of the case) and the need in particular circum-

---

1. IDJ states that its fees and costs in the district court litigation amounted to approximately $3.5 million, and that it advanced another $1.25 million in legal fees on behalf of co-defendant Lyor Cohen ("Cohen"), IDJ's chief executive officer, these figures not including the fees and costs associated with preparing the instant application. (*See* Memorandum of Law in Support of The Island Def Jam Music Group's Motion to Award Reasonable Attorneys' Fees and Costs, dated February 13, 2006 ("IDJ Mem.") at 12–13.)

2. The facts involved in the parties' dispute are summarized in prior rulings of this Court. *See, e.g., TVT Records v. The Island Def Jam*, 288 F.Supp.2d 506, 507–08 (S.D.N.Y.2003); *TVT Records v. The Island Def Jam*, 279 F.Supp.2d 366, 373–75 (S.D.N.Y.2003), *rev'd*, 412 F.3d 82 (2d Cir.2005).

3. By letter to the Court dated June 28, 2006, TVT called to the Court's attention a lawsuit that IDJ's parent company, UMG Recording, Inc. ("UMG"), brought in the United States District Court for the Central District of California against certain insurance carriers from which it seeks reimbursement of expenses incurred in defending the instant litigation. TVT expresses concern over the prospect that

IDJ may obtain reimbursement from the insurance carriers, thus amounting to improper "double recovery" should IDJ's instant motion be granted. TVT therefore argues that IDJ's applications should be denied on this basis.

In a response dated July 6, 2006, IDJ counters that TVT cannot escape liability for attorneys' fees and costs on the ground that IDJ may be reimbursed by its insurers, and that the potential for double recovery is a matter to be resolved between the insured and its carriers. IDJ acknowledges the California litigation and indicates that it involves three carriers. IDJ further advises that it recently entered into a settlement agreement with two of the carriers, the terms of which are "confidential," and that "the settlement did not come close to making IDJ whole for the damages suffered by it in connection with this action." (Letter to Hon. Victor Marrero from Paul G. Gardephe, dated July 6, 2006, at 3.) With regard to the primary carrier, IDJ reports that the California district court granted a motion for summary judgment against UMG which IDJ intends to appeal. Because this Court denies IDJ's instant motion for attorneys' fees and costs, it need not address this matter.

stances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

The same standard governs whether the prevailing party is the plaintiff or the defendant. *See id.; see also Matthew Bender & Co. v. West Pub. Co.,* 240 F.3d 116, 121 (2d Cir.2001). In determining whether an application for attorneys' fees is objectively unreasonable courts may weigh, among other considerations, whether the claim is "patently devoid of legal or factual basis." *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.,* No. 96 Civ. 4126, 2004 WL 728878, at *3 (S.D.N.Y. Apr.6, 2004) (citations omitted). Evidence of bad faith in the conduct of the litigation may also bear on the appropriateness of awarding attorneys fees. *See Matthew Bender,* 240 F.3d at 125. That a defendant prevailed in the litigation, however, " 'does not necessarily mean that the plaintiff's position was frivolous or objectively unreasonable.' " *Penguin Books,* 2004 WL 728878, at *2 (*quoting Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.,* No. 01 Civ. 10135, 2003 WL 22434153, at *3 (S.D.N.Y. Oct.24, 2003)).

■ In support of its application, IDJ relies heavily on the Second Circuit's reversal of the judgment in favor of TVT as evidence that TVT's action was legally baseless and frivolous from the start. On that basis it argues that TVT's copyright and fraud concealment claims were thus "objectively unreasonable," warranting an award of IDJ's attorneys' fees and costs. IDJ asserts that approval of its request is also justified by TVT's alleged bad faith motivation, the need to compensate IDJ for the costs of its defending TVT's allegedly meritless claims as well as to deter future claimants from engaging in frivolous litigation. Arguing for parity by allusion to what's-good-for-the-goose reasoning, IDJ suggests that if it was proper for the Court to award TVT attorneys' fees as part of the relief granted following the jury verdict against IDJ on TVT's copyright infringement and common law claims, it would be just as proper for the Court to approve IDJ's application now that the Second Circuit has vacated TVT's judgment. The Court is not persuaded by these arguments.

The premise of IDJ's application is that on appeal the Second Circuit concluded that TVT's claims of copyright infringement, tortious interference and fraudulent inducement were "flawed, should never have been brought, and should have been dismissed as a matter of law." (Reply Memorandum of Law in Further Support of [IDJ's] Motion to Award Reasonable Attorneys' Fees and Costs, dated April 10, 2006 ("IDJ Rep."), at 1.) On the basis of what IDJ proclaims TVT, and implicitly this Court, should have known from the start, or failed to divine, about how the Second Circuit would rule on an intense dispute over complex points of law, IDJ now contends that it was objectively unreasonable for TVT to have persisted in pressing its claims through trial, and that as a consequence the burden of paying IDJ's attorneys' fees and costs should be shifted to TVT. This argument itself suffers from a fundamental flaw: in essence, it is grounded on hindsight.

Indisputably, hindsight is a marvelous gift, a divine blessing for any ordinary mortal to possess. Regrettably, however, such perfect clairvoyance cannot serve as underpinning for a rule of law. To hold that the mere happenstance that a litigant prevails on appeal categorically equates to a ruling that the claims of the losing party were frivolous and unreasonable and not worthy of being pursued in the first instance, and on that account to subject the loser to pay the adversary's attorneys' fees

and costs, would not only penalize litigants for persisting with even colorable claims, but inherently handicap the vast majority of unfortunates not endowed with sufficient prophetic power. Such a holding potentially would also do away with the American rule, the premise of which is that except in very limited circumstances, each side to a lawsuit bears its own litigation expenses. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *see also Fogerty*, 510 U.S. at 533–34, 114 S.Ct. 1023. Without more, appellate vindication of the validity of a legal claim or defense can go only so far; it cannot stretch retroactively to express a value judgment about a party's bona fides in commencing the underlying litigation. Largely on account of these concerns, courts that have considered similar arguments have rejected IDJ's proposition. *See, e.g., Penguin Books*, 2004 WL 728878, at *2; *CK Co. v. Burger King Corp.*, No. 92 Civ. 1488, 1995 WL 29488, at *1 (S.D.N.Y. Jan.26, 1995) ("To hold otherwise would establish a *per se* entitlement to attorney's fees whenever [claims] are resolved against a copyright plaintiff.").

IDJ's reading of the Second Circuit's decision as a conclusion that TVT's action never should have been brought, and thus justifying an award of IDJ's attorneys' fees, would be especially pernicious in the circumstances involved in the instant case. The theory overlooks several essential points that bear significantly on a fair assessment of TVT's reasonableness in prosecuting this case. First, in the opening round of this litigation the Court granted in part and denied in part TVT's motion for a preliminary injunction. *See TVT Records v. The Island Def Jam Music Group*, 225 F.Supp.2d 398 (S.D.N.Y.2002). That proceeding entailed an initial appraisal of TVT's likelihood of success on the merits of its various claims, including the

cause of action for breach of contract on which TVT prevailed at trial and which IDJ did not appeal, as well as the copyright infringement and common law claims that ultimately were the subject of the jury verdict and IDJ's subsequent appeal.

Significantly, at that time IDJ commenced an interlocutory appeal in which it moved for a stay of the Court's preliminary injunction pending appeal and for an expedited appeal of the Court's ruling. In that proceeding, the Court of Appeals presumably heard argument on essentially some or all the same legal challenges to the Court's analysis of the legal issues that were later presented in IDJ's successful appeal after trial. The Second Circuit rejected IDJ's application, on that occasion denying a stay and expedited appeal of the preliminary injunction. *See TVT Records Inc. v. Island Def Jam Music*, Docket No. 02–9203, (2d Cir. Nov. 15, 2002). Thus, the Court of Appeals enabled the litigation of the merits of those claims to proceed, its decision presumptively reflecting some level of review and endorsement of this Court's preliminary analysis of the likelihood of TVT's success on the merits of its various claims. Clearly, had the Circuit Court panel that initially heard IDJ's defenses and denied the emergency relief IDJ sought from this Court's first ruling on those claims found it so obvious that TVT's action "failed *ab initio* ... as a matter of law" (IDJ Mem. at 9), the Court of Appeals would have so signaled at that early stage of the litigation and not allowed further proceedings on claims IDJ characterizes as patently devoid of legal basis from day one. That the same appellate court later reversed a jury verdict after trial on the merits of TVT's claims does not, after the fact and by that reason alone, render the underlying action inherently unreasonable or frivolous.

It bears noting as well that just five months after the Court of Appeals denied IDJ's motions for a stay and expedited appeal, IDJ agreed, by stipulation between the parties, to withdraw its appeal from active consideration. (*See TVT*, No. 02–9303, Docket entry dated April 18, 2003.) Thus, at that time IDJ itself elected to proceed to litigate TVT's allegedly meritless and bad faith claims in the district court, rather than continue to pursue an appeal that potentially might have produced an earlier resolution of the issues of law involved in the claims IDJ now so roundly debases.

Second, IDJ contends that TVT's copyright infringement action was legally groundless and objectively unreasonable because the Second Circuit's holding—that a license must formally be rescinded before an infringement action based on fraudulent inducement of a copyright license can proceed—"should have been obvious to TVT." (IDJ Mem. at 9.) Neither the theory nor any of the supporting authority upon which the Circuit Court's ruling was anchored were presented to this Court by IDJ during the extensive litigation of this case, which proceeded on the parties' and the Court's understanding that TVT's commencement of the underlying suit was sufficient to constitute a rescission of the license TVT had granted to IDJ to produce and distribute a particular recording. Nor apparently was the ultimately controlling basis argued by IDJ before the Court of Appeals, for the Circuit Court noted that it agreed that the copyright verdict could not stand as a matter of law, "but not for the reason advanced by IDJ and Cohen." *TVT*, 412 F.3d at 92.

Under these circumstances, the Court cannot justifiably find that the doctrine which in the final analysis the Second Circuit enunciated as the ground for its reversal of the copyright infringement judgment should have been so obvious to TVT—or indeed to this Court, or even to IDJ—so as to warrant a determination that TVT's pressing its copyright claim on the legal theory on which the litigation actually proceeded was objectively unreasonable. Indeed, this legal issue was never fully briefed or argued by either party before this Court because, upon TVT's filing this lawsuit, IDJ promptly ceased production and distribution of the allegedly infringing recording, and on that basis the Court denied TVT's request for a preliminary injunction as to that aspect of the litigation. *See TVT*, 225 F.Supp.2d at 406.

Nor can the Court find that by reason of the Circuit Court's reversal of the underlying judgment alone TVT's infringement and common law claims were frivolous, patently devoid of legal or factual basis, or motivated by bad faith. *See Penguin Books*, 2004 WL 728878, at *3. As originally filed, this case contained multiple claims, some of which survived the Court's ruling on TVT's motion for a preliminary injunction as well as IDJ's motion for summary judgment, and others that did not. A central part of the action was the breach of contract claim on which TVT prevailed at trial and which IDJ did not appeal. The operative facts pertaining to the fraudulent inducement and tortious interference claims that the Court of Appeals reversed were closely related to those at issue in the breach of contract cause of action.

IDJ repeatedly accentuates that its defense, while rejected by rulings of this Court on the law and by the jury verdict, was ultimately vindicated on appeal, thus allegedly evidencing that TVT's claims were frivolous, patently meritless and brought in bad faith all along. As often and vigorously as IDJ so proclaims, the voluminous record this case has engendered should suffice to reasonably demon-

strate otherwise. That record includes this Court's exhaustive analysis of the complex legal issues the parties raised, as well as demanding search through the not infrequently ambiguous, conflicting or absent controlling authorities that adjudication of the legal disputes entailed—consideration that occupied no less than twelve lengthy written decisions of this Court, as well as the Circuit Court's first review on appeal. It is not the ordinary practice of this Court, nor of the Court of Appeals, to expend such vast stores of judicial resources to uphold and permit a jury trial to proceed with respect to disputes as utterly baseless as IDJ seeks to portray the claims here at issue.

Nor is IDJ's contention that TVT engaged in what this Court described as "scorching litigation tactics" necessarily evidence of bad faith sufficient to warrant an award of attorneys' fees to IDJ. *See TVT v. Island Def Jam Music Group*, 214 F.R.D. 143, 144 (S.D.N.Y.2003). In making that characterization, the Court explicitly referred to the practices of both parties. *See id.* In fact, during the course of the litigation, the Court repeatedly chided both parties for the fierce and at times even seemingly excessive advocacy they pursued, some aspects of which encouraged or fed upon each other's extreme litigation strategies, or were mutually inspired by the intense personal animosity and business rivalry that pervaded the relationship between the principal parties. To level all blame and penalize only one side on this basis with an award of legal fees and costs would not be equitable or otherwise justified under these circumstances.

Finally, with regard to IDJ's parity argument, the Court points out that its granting of TVT's application for attorneys' fees was limited to post-trial litigation costs. More significantly, the Court

made it abundantly clear that the predicate for its deeming the award appropriate was the jury finding of conduct by Cohen sufficiently blameworthy, willful and egregious to justify imposing punitive damages as regards both the copyright infringement and common law claims. In this regard, the Court stressed the role that awards of attorneys' fees play both as bounty to give injured parties the incentive to undertake the risks and burdens of litigation, and as a punitive and deterrent element of exemplary damages in cases where malice has been proved. *See TVT*, 288 F.Supp.2d at 508–09. Absent these unique considerations, especially the aggravating moral element, it is doubtful that the Court would have found adequate support to grant TVT any award of attorneys' fees. *See* 4 *Nimmer on Copyright*, § 14.10[D][1] at 14–187 (2004) ("[A]ttorneys' fees generally will be awarded only where there is some element of moral blame against the losing party.").

While in that context the Court made reference to the exceptional difficulties IDJ's litigation tactics had presented that added to the costs of litigation, zealous advocacy by itself, which as noted above prevailed on both sides of this litigation, would not have constituted sufficient ground to support a finding of malice, bad faith or moral blame justifying the Court's awarding attorneys' fees to the prevailing party, whether plaintiff or defendant.

■ Turning to IDJ's Rule 54(d) motion for an award of costs, the Court denies the application essentially on the same grounds on which the Court bases its denial of attorneys' fees in connection with TVT's copyright infringement claim. First, the Court previously determined that because TVT's copyright and common law claims were so closely interwoven, a fair apportionment of the fees and costs associated with litigating this action would

attribute respectively to each part of that division 50 percent of the expenditures. The Court's rejection of IDJ's § 505 motion disposes of the statutory basis for the award of any of IDJ's costs associated with defending TVT's copyright claim. Courts in this and other districts generally hold that as regards applications for costs in copyright actions, § 505 supersedes the application of Rule 54. *See Barrera v. Brooklyn Music, Ltd.,* 346 F.Supp.2d 400, 404–05 (S.D.N.Y.2004); *Sanford v. CBS Inc.,* 108 F.R.D. 42, 43 (N.D.Ill.1985); *see also Susan Wakeen Doll Co. v. Ashton–Drake Galleries,* 272 F.3d 441, 458 (7th Cir.2001) ("In a copyright action, fees are governed by 17 U.S.C. § 505, and any award of fees and non-taxable costs must come through it, and not through the general costs provisions of 28 U.S.C. § 1920.").

Second, regarding TVT's common law claims, IDJ's Rule 54 motion for reimbursement of costs ignores that IDJ was not the prevailing party as to all the disputes litigated in this case. In respect of TVT's breach of contract cause of action, the jury rendered a verdict of liability against IDJ which IDJ elected not to appeal. In addition, the jury found in favor of TVT on IDJ's tortious interference counterclaim. Moreover, just as the Court determined, for the purposes of apportioning TVT's recoverable fees and costs, that the copyright infringement claim was closely interrelated with the common law claims and warranted reducing the lodestar measure to avoid duplicate recovery, as to the common law claims on which IDJ prevailed on appeal a similar analysis would be appropriate. This result would follow because the operative facts and legal issues underlying the tortious interference and fraudulent concealment claims were integrally connected with the facts at issue in TVT's breach of contract cause of action, despite the disproportionate size of the jury verdict for TVT on this successful claim relative to the amount of the awards for the common law claims reversed on appeal. Thus, even if any grounds existed to award IDJ costs with respect to the common law claims on which it prevailed, the lodestar for any award would have to be substantially reduced by the extent of the overlap of costs associated with the claims on which IDJ prevailed and those on which it did not.

Nonetheless, in this case any such apportionment would be unnecessary because the Court finds no sufficiently compelling grounds to support the exercise of its discretion to award IDJ any portion of the costs it requests associated with the non-infringement claims. *See Wilder v. GL Bus Lines,* 258 F.3d 126, 129 (2d Cir. 2001) (noting that Rule 54(d)(1) "is phrased permissively . . . because it permits a court to refuse to impose costs on the losing party at all.") (*citing Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) ("Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party.")).

First, as elaborated above, the Court is not persuaded by IDJ's contention that TVT's litigation of its claims evinced the bad faith or unreasonable pursuit of "baseless" claims that IDJ portrays, again resting primarily on IDJ's own expansive and conclusory reading of the Court of Appeals' decision as warranting that "TVT had no reasonable grounds for pursuing either its copyright or its fraud claims." (IDJ Rep. at 6.) For the reasons already articulated, the Court rejects this characterization of the Second Circuit's decision and the conclusion IDJ draws from it. Instead, the Court finds, based on the totality of the record of this litigation— including the Court's ruling on the TVT's motion for a preliminary injunction and

the Second Circuit's rejection of IDJ's motions for a stay and expedited appeal, the Court's decisions on IDJ's motions for summary judgment and for a new trial, the trial itself and the extensive additional litigation it engendered—that this action was not what IDJ lightly dismisses as merely a "straightforward and modest contract dispute." (IDJ Rep. at 6.) Rather, the case was sufficiently "close, complex, and protracted" to justify denial of any portion of IDJ's costs associated with the common law claims on which it prevailed on appeal. *Remington Prods., Inc. v. North Am. Philips Corp.,* 763 F.Supp. 683, 686–87 (D.Conn.1991).

## II. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 299) of defendant The Island Def Jam Music Group for an award of attorneys' fees pursuant to 17 U.S.C. § 505 and of costs pursuant to Federal Rule of Civil Procedure 54(d) is DENIED.

**SO ORDERED.**