**TVT RECORDS and TVT Music, Inc., Plaintiffs,**

v.

**THE ISLAND DEF JAM MUSIC GROUP and Lyor Cohen, Defendants.**

**No. 02 Civ. 6644(VM).**

United States District Court, S.D. New York.

Oct. 22, 2003.

James E. D'Auguste, James Philip Chou, Tuneen E. Chisolm, Akin, Gump, Strauss, Hauer & Feld, LLP, New York City, Peter L. Haviland, Los Angeles, CA, Rhonda R. Trotter, Akin, Gump, Strauss, Haier & Feld, LLP, Los Angeles, CA, for TVT Records, TVE Music, Inc.

Paul G. Gardephe, Patterson, Belknap, Webb & Tyler, LLP, New York City, for Island Def Jam Music Group.

Matthew S. Dontzin, New York City, James M. LaRossa, New York City, for Lyor Cohen.

## DECISION AND ORDER

MARRERO, District Judge.

Following a bifurcated trial of this action, the jury rendered verdicts of liability and awarded substantial damages in favor of plaintiffs TVT Records and TVT Music, Inc. (collectively "TVT") and against defendant The Island Def Jam Music Group ("IDJ") on TVT's claim of breach of contract, and against IDJ and defendant Lyor Cohen, IDJ's Chairman ("Cohen" and, collectively with IDJ, "Defendants") jointly and severally on TVT's claims of willful copyright infringement, fraud by fraudulent concealment and tortious interference with contractual relations. By Decision and Order dated September 2, 2003, the

Court denied Defendants' post-trial motions pursuant to Federal Rule of Civil Procedure 50(b) for a judgment as a matter of law.[1] By a separate Decision and Order issued the same day, the Court granted Defendants' motions pursuant to Rule 59 for a new trial and/or remittitur of the punitive damages award.[2] The Court reserved decision on TVT's motion pursuant to Section 505 of the Copyright Act, 17 U.S.C. § 505,[3] requesting an amount of, at minimum, $2,192,863.20 in attorneys fees and $567,460.42 in expenses.[4] TVT subsequently supplemented its motion to include TVT's additional attorneys' fees and expenses totaling $494,474.35 that it ascribes to post-trial proceedings in this action. (See Supplemental Declaration of Pamela L. Gurley in Further Support of Plaintiffs' Motion for Attorneys' Fees, dated September 16, 2003, at 2.)

In the Remittitur Decision, the Court observed that among the functions of punitive damages, the remedy offers a law enforcement "bounty", serving to create an incentive for plaintiffs injured by extreme misconduct to undertake the risks and burdens of litigation to redress the wrongs. See TVT, 279 F.Supp.2d 413, 425–26 (citing cases). This role is mani-fested in rules permitting juries to hear evidence of, and to take into account in assessing punitive awards, the extent of attorneys' fees and other litigation costs plaintiffs are forced to incur in order to prosecute defendants' egregious offenses. See id. (citing Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 22, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), and Softel, Inc. v. Dragon Med. and Scientific Comm. Ltd., 891 F.Supp. 935, 945–46 (S.D.N.Y.1995)). Implicitly, allowing the jury to weigh such evidence assumes that any penalty assessed may incorporate consideration of plaintiff's attorneys' fees and costs as an element of the recovery it awards. See Jeffries Avlon, Inc. v. Gallagher, 149 Misc.2d 552, 567 N.Y.S.2d 339, 339–40 (N.Y.Sup.1991) (noting that although legal fees are generally not recoverable, an exception has been carved in some jurisdictions, including New York, "permitting evidence of attorneys' fees to be considered by the fact-finder in determining an award of exemplary or punitive damages in cases where malice has been proved . . . .")

In practice, enabling plaintiffs to offer evidence of litigation costs may serve a dual purpose. The magnitude of the financial burdens the litigation imposes upon

---

**1.** The Decision and Order concerning the Rule 50(b) motion is reported as TVT Records v. The Island Def Jam Music Group, 279 F.Supp.2d 366 (S.D.N.Y.2003).

**2.** The Decision and Order concerning the Rule 59 motion (the "Remittitur Decision") is reported as TVT Records v. The Island Def Jam Music Group, 279 F.Supp.2d 413 (S.D.N.Y.2003).

**3.** Section 505 of the Copyright Act provides in pertinent part: "In any civil action under this title, the court in its discretion may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

**4.** These figures are based on TVT's claimed litigation fees and costs amounting to approx-imately $3.5 million, with 80 percent of that total apportioned to obligations TVT purportedly incurred to advance the prosecution of its copyright infringement claim. (See TVT's Memorandum of Law in Support of Its Motion For Attorneys' Fees, dated June 16, 2003, at 1.) TVT also requested an upward adjustment of the attorneys' fees award based on the difficulty of the litigation, in accordance with the factors articulated in United States Football League v. National Football League, 887 F.2d 408, 413 (2d Cir.1989), cert. denied, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990). (See id.) Alternatively, TVT seeks adjustment of the award to a higher amount in the exercise of the Court's inherent power or under 28 U.S.C. § 1927 to reflect Defendants' alleged vexatious litigation. (See id.)

the plaintiff may provide to the factfinder instructive circumstantial insight into the full scope of the misconduct and the resources required to bring it to light, as well as some glimpse into the state of mind of the offender concerning issues such as willfulness, bad faith, and other indeces of reprehensibility. Allowing the jury to consider the plaintiff's outlays as a factor in its assessment of punitive relief could also inform the jury's calculation of the penalty fitting for the particular offender and the offense, that is, the damages that would sufficiently punish and deter the wrongdoer's extreme malfeasance by rendering it unprofitable to engage in such misconduct and alerting the defendant of the whole range of the underlying risks entailed, including the prospect of being tacitly taxed in a punitive award for the litigation costs the plaintiff was compelled to expend to prosecute the action.

The Court pointed out, however, that this law enforcement purpose could be problematic in some circumstances, specifically "where the litigation involves multiple claims arising out of the same core event, some based on common law and some on statutory actions that authorize recovery of attorney's fees and costs." *Id.* at n. 16. This concern, as the Court noted, derives from the potential for duplicative recovery that may occur in the event a common law punitive damages award includes an amount that encompasses and rewards as an unspecified component of harms suffered, the plaintiff's undifferentiated expenses incurred in prosecuting the entire action, and the plaintiff later separately seeks reimbursement of attorney's fees and costs, especially when such recovery is authorized by an applicable statute. *See id.*

The circumstances described above prevail in this case. The Court, recognizing the unique and extensive burdens that Defendants' intense, at times even excessive, litigation strategies had imposed on TVT, allowed the jury to hear and take into account in assessing punitive damages, evidence of TVT's outlays for attorneys' fees and costs, at that time an amount of approximately $3 million. *See id.* at 453–55. TVT prevailed under both its common law and federal copyright infringement claims. The damages assessed in respect of the various claims, however, are lopsided. While the combined awards as regards the common law causes of action totaled $23,496,746 in compensatory and $108,000,000 in punitive damages, those pertaining to copyright infringement amounted to only $411,275 for compensatory and $300,000 for punitive relief.[5] Thus, while TVT contends that the bulk of its litigation expenses related to pursuing the copyright claims—by TVT's computation at least 80 percent of its fees and costs— the reality appears otherwise. The federal claims represent but a fraction of the damages the jury recognized. Similarly, based on the extensive proceedings and the voluminous record in which the Court participated, the Court is not persuaded that TVT's apportionment of its labor and related costs as between the common law and federal statutory claims comports with a fair assessment of the parties' actual litigation efforts.

The Court recognizes that there cannot be a categorical or formulaic correspondence between the damages actually recovered on the federal claims and the amount of attorneys' fees and costs eligible for reimbursement under the statute. Conceivably, the litigation of some complex

---

**5.** With regard to its willful copyright infringement claims, TVT subsequently elected to receive, in lieu of actual damages, profits and punitive damages, the $150,000 statutory damages award determined by the jury. *See TVT,* 279 F.Supp.2d at 416–17, n. 3.

matters may legitimately demand commitment of resources that in the end may be out of proportion with modest achievement in respect of some claims, while greater results are attained as to other interrelated claims. That eventuality should not by itself serve to bar recovery of the prevailing party's reasonable fees and costs properly incurred in pursuit of the less successful though meritorious claim. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir.1996) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

■ At the same time, however, the Court does not accept Defendants' contention that not more than five percent of TVT's litigation costs relate to and may be imposed on Defendants by reason of the relatively small recovery and lesser prominence of the infringement claims in relation to the common law causes of action and their more triumphal outcomes. Although TVT's infringement claims generated substantially less litigation activity and recovery, the element of fraud that was integral to each of TVT's common law actions was also a critical aspect of its willful infringement claims. Consequently, significant amounts of the litigation activities and attendant costs required by the copyright actions, and that may appear to have been undertaken here predominantly in pursuit of the common law claims, in fact would have been necessary to support effective litigation of the infringement claims even if the common law actions did not exist. To this extent, the Court considers an apportionment of 50 percent of the litigation costs as more fairly reflecting a proper division of litigation expenses as between TVT's copyright infringement and the common law claims.

Nonetheless, TVT's application for attorneys' fees and costs seeks an award encompassing all expenses relating to its willful infringement claims and supplemental awards for the balance of TVT's litigation costs pertaining to those and/or its other claims. For the purposes of passing upon TVT's instant motion, the Court considers the evidence pertaining to the exceptional difficulties and burdens associated with prosecution of this litigation and reiterates its findings set forth in this regard in the Remittitur Decision. The Court deems these considerations appropriate and sufficient to warrant exercise of its discretion to grant TVT's motion in part for an award of attorney's fees and costs in respect of TVT's infringement claims to the extent recoverable. However, the Court finds insufficient basis to support any fee enhancement under the theories advanced by TVT. First, the Supreme Court has established a strong presumption that the lodestar represents the reasonable fee under the federal fee-shifting statutes and thus has substantially narrowed, if not effectively abolished altogether, the circumstances which justify enhancements. *See Loper v. New York City Police Department*, 853 F.Supp. 716, 721 (S.D.N.Y.1994) (concluding that "fee enhancements under the fee-shifting statutes are no longer permissible in this Circuit") (citing *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)).

Second, even insofar as this Court finds adequate grounds to support TVT's recovery of attorneys' fees, it cannot approve such an award with regard to TVT's original application to the extent TVT's punitive award is ultimately sustained in the amount remitted. In reviewing Defendants' motions for remittitur, the Court considered that the extraordinary size of the punitive award, an aggregate of $108 million, gave rise to a strong and reasonable inference that the jurors must have fully taken account, in their calculus of the

award sufficient to achieve the level of punishment and deterrence of Defendants appropriate in this case, all permissible grounds and elements supported by the evidence they heard, including TVT's litigation expenses.

■ The Court's ruling on Defendants' remittitur motions reduced the jury's punitive damages award to an aggregate of $29,125,000, which TVT elected to accept in lieu of a new trial. Whether or not TVT's litigation costs entered into the jury's damages verdict, in determining the remitted award the Court itself considered the adjusted amount to constitute the penalty sufficient to achieve fully the relevant functions of punitive damages under the totality of the circumstances evidenced here. To this end, the Court specifically weighed in the mix both the appropriate punishment of Defendants' misconduct and its deterrence in the future, as well as recognition of the law enforcement incentive that is embodied in punitive damages awards as described above. The Court also weighed that in this case the jury assessed a substantial compensatory award essentially redressing the entire amount of the losses TVT claimed, and that, as elaborated in the Remittitur Decision, under some circumstances a compensatory damages award that essentially makes the victim whole serves a punitive function as well. *See TVT*, 279 F.Supp.2d at 424–25 (citing *State Farm Mutual Auto.*

*Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 1525, 155 L.Ed.2d 585 (2003)).

Accordingly, the Court concludes that granting TVT's separate application for attorneys' fees and costs would represent a duplication of recovery to the extent the request relates to factors that were already recognized and presumably reflected, even if not explicitly articulated as such, in the jury's punitive damages awards, even as remitted. Had the punitive awards assessed far less, for example, in proportions nearer to or less than the amount of TVT's total litigation expenses admitted in evidence, the Court's supposition concerning the probable reflection of these costs in the verdict would not be warranted. In that event, a more compelling basis might exist to support a separate award to TVT for attorneys' fees and costs.[6]

■ With respect to TVT's supplemental application for post-trial litigation expenses, however, the amounts requested were not before the Court and jury at the time the verdict was rendered, and thus could not have figured as a consideration in the size of the punitive award, either as assessed by the jury or as remitted. For this reason, the Court is inclined to recognize and grant in part TVT's supplemental application on the basis of the same apportionment described above with regard to TVT's original request.

Having reviewed the documentation TVT has submitted in support of its appli-

---

6. The Court is mindful that in the realm of possibilities it is conceivable that on appeal of this Court's punitive damages ruling the Circuit Court, even if it were to affirm the legal basis supporting an award, might find grounds upon which to direct a further reduction of the amount of the penalty, without explicitly embodying in the appellate determination specific consideration of how such lower award might affect TVT's prospects for justified recovery of attorney's fees and costs.

In that event, TVT could seek clarification from the Circuit Court as to whether any such additional remittitur were meant to reflect recognition of litigation costs as a factor, and propose a remand for the purposes of any adjustment indicated by this consideration. If any such award as further modified does not adequately reflect fees and costs, TVT could petition this Court to reopen this matter so as to examine the litigation costs request in light of the circumstances then prevailing.

cation, however, the Court is persuaded that some downward adjustment in the lodestar figures and other supplemental fees and costs requested is warranted. The reductions relate to expenses that reflect substantial inefficiencies or seem excessive or inappropriate. The Court agrees with Defendants' observations, for example, that the number of attorneys engaged in TVT's post-trial efforts, a total of 10, appears to be insupportably high, and that certain travel costs and other unrecoverable fees claimed should be substantially discounted or disallowed. The Court, however, rejects Defendants' contentions that certain third-party litigation-related invoices TVT paid directly by that reason alone should be disallowed, and that the costs of electronic research are not recoverable in connection with TVT's application. *See Gonzalez v. Bratton,* 147 F.Supp.2d 180, 212–13 (S.D.N.Y.2001), *aff'd,* 48 Fed. Appx. 363 (2d Cir.2002) (citing cases). Accordingly, to effectuate the decreases and disallowances adopted here, the Court will reduce TVT's lodestar figure by 20 percent, and lower the other expenses claimed also by 20 percent.

■ Of the $494,474.35 TVT requested, $125,162.42 represent fees directly related to TVT's motion for attorneys' fees. As part of the apportionment between expenses reasonably attributable to the infringement claim and expenses attributable to the other claims the Court will not reduce that amount by 50 percent, but rather by 25 percent, thus yielding for this purpose a starting base of $93,871.82. This determination is grounded on the premise that where litigation entails complicated and interrelated multiple claims, some permitting recovery of legal expenses and others not, the preparation of an application for attorneys' fees raises unique difficulties that necessarily entail devoting additional effort and resources in parsing out the claims and their respective allocations of costs and in gathering the corresponding supportive documentation pertaining only to the recoverable expenses. However, the Court will reduce the threshold figure by an additional 20 percent to reflect the same sources of inefficiencies or excessive expenditures identified above with regard to the balance of the application. Thus, the allowable costs related to the preparation of TVT's attorneys' fees motion total $75,097.75.

Reducing the remaining $369,311.93 by 50 percent to account for the Court's apportionment as discussed above yields $184,655.97. Applying to this number the further 20 percent to reflect the reductions and disallowances described above produces $147,724.78. Adding to this figure the $75,097.75 allowed with respect to the preparation of TVT's attorneys' fees application results in a total award of $222,822.53 attributable to TVT's post-trial supplemental litigation costs. The Court consequently will authorize entry of an amended judgment in favor of TVT for an additional amount of $222,822.53.

## ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion of plaintiffs TVT Records and TVT Music, Inc. ("TVT") for an award of attorneys' fees and costs incurred in connection with this action, as set forth in TVT's supplemental request dated September 16, 2003, is granted in part as set forth in this Order; and it is further

**ORDERED** that the Clerk of Court is authorized to enter an amended judgment in this action in favor of TVT and against Defendants The Island Def Jam Music Group and Lyor Cohen, jointly and severally, in an additional amount of $222,822.53 representing post-trial attorneys' fees and

costs TVT incurred in prosecuting this action; and it is further

**ORDERED** that in other respects TVT's motion for attorneys fees and costs is DENIED, without prejudice to TVT's renewal of its motion insofar as appropriate under the circumstances described in the decision above.

**SO ORDERED.**